TRINITY UNIVERSAL INSURANCE COMPANY and First National Bank in Dallas, Appellants,

v.

UNITED STATES of America, Appellee.

No. 24246.

United States Court of Appeals Fifth Circuit.

Sept. 12, 1967.

Lloyd E. Elliott, Brundidge, Fountain, Elliott & Churchill, Dallas, Tex., for appellants.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Robert H. Solomon, Attys., Dept. of Justice, Washington, D. C., Melvin M. Diggs, U. S. Atty., Fort Worth, Tex., Kenneth J. Mighell, Asst. U. S. Atty., Dallas, Tex., for appellee.

Before RIVES, WISDOM and GOLDBERG, Circuit Judges.

RIVES, Circuit Judge.

This case presents the clear-cut issue of whether, when a Miller Act[1] surety completes a defaulted contract pursuant to its performance bond, the government may set off taxes owed by the contractor against the surety's claim to the fund retained by the government to insure performance.

Dallas Building, Inc., the contractor, was awarded a contract for the construction of a nuclear warfare laboratory at Kirtland Air Force Base, Albuquerque, New Mexico, for the total sum of $1,008,889.36.

Trinity Universal Insurance Company, the surety, executed for the contractor the two bonds required by the Miller Act; one to guarantee performance and the other payment of laborers and materialmen for work done. When 90% of the contract had been completed and most of the progress payments made, the contractor defaulted and its right to proceed further was terminated by the government. The retained, unpaid amount earned by the contractor was then $39,906.96, and the amount to be earned upon completion of the remaining work was $67,276.16. Federal unemployment, withholding and F.I.C.A. tax liabilities of the contractor in the amount of $6,495.07 were unpaid.[2]

The surety, in discharge of its obligations, agreed with the government to

---

1. Act of Aug. 24, 1935, c. 642; 49 Stat. 793; 40 U.S.C.A. 270a.

2. The record does not disclose whether these taxes arose from the work covered by the contract. We agree with the obvious assumption that that fact was not material. See note 3, infra.

take over and complete the contract. The surety thereafter expended the amount of $116,623.37 for the work done. It was paid for that work by the government the sum of $67,276.16. In addition, on October 14, 1965, the government paid the surety $33,411.89, the retainage for work done by the contractor less the $6,-495.07 owed by the contractor for taxes. In this suit the surety seeks to recover the $6,495.07 setoff.

Upon some of the principles of law involved, the surety and the government are in agreement, viz: 1) The government has no claim against the surety by reason of the taxes of the contractor.[3] 2) The surety has certain equitable or derivative rights, such as rights acquired through subrogation or assignment.[4] 3) The surety is subrogated to the rights of the contractor, but such rights will, of course, not suffice because the government has a valid setoff against the contractor.[5]

The decisive question in dispute between the parties is whether a surety under a Miller Act performance bond which, under agreement with the government, completes the contract upon contractor's default and expends in such completion more than the full contract price has a right to have the contract price, free from setoff, applied to the completion of the project.

The surety's claim was rejected by the district court upon the authority of United States v. Munsey Trust Co., 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022.

In that case the contractor had failed to pay materialmen and laborers and they had been paid by the surety on the payment bond. The Court held that the laborers and materialmen paid by the surety had no rights to which the surety could be subrogated, and rejected the surety's claim to the retainage free from setoff. The Court noted, however, that a distinction might exist in the case of a surety which chose to complete the contract under its performance bond:

"Respondent argues that if the work had not been completed, and the surety chose not to complete it, the surety would be liable only for the amount necessary to complete, less the retained money. Moreover, if the surety did complete the job, it would be entitled to the retained moneys in addition to progress payments. The situation here is said to be similar. But when a job is incomplete, the government must expend funds to get the work done, and is entitled to claim damages only in the amount of the excess which it pays for the job over what it would have paid had the contractor not defaulted. Therefore, a surety would rarely undertake to complete a job if it incurred the risk that by completing it might lose more than if it had allowed the government to proceed. When laborers and materialmen, however, are unpaid and the work is complete, the government suffers no damage. The work has been done at the contract price. The government cannot suffer damage because it is under

3. General Casualty Co. of America v. United States, 5 Cir. 1953, 205 F.2d 753, 755; United States v. Crosland Construction Co., 4 Cir. 1954, 217 F.2d 275, 277; United States v. T. E. Hill, 5 Cir. 1966, 368 F.2d 617, 624; United States v. Seaboard Surety Co., N.D.Tex.1961, 201 F.Supp. 630, 633.

4. The surety's derivative rights have been discussed in a number of excellent law review articles and comments, e. g.: Reconsideration of Subrogative Rights of the Miller Act Payment Bond Surety, 71 Yale L.J. 1274 (1962); Cushman, The Surety's Right of Equitable Priority to Contract Balances in Relation

to the Uniform Commercial Code, 39 Temp.L.Q. 239 (1966); Comments, The Surety's Rights to Money Retained from Payments Made on a Public Contract, 31 Fordham L.Rev. 161; Notes, Subrogation-Miller Act—Surety's Right to Recover Withheld Funds Under a Government Contract, 9 N.Y.L.Forum 226; Turner, The Dutcher Decision in Retrospect, Insurance Counsel Journal 96 (Jan. 1964).

5. United States v. Munsey Trust Co., 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022; Pearlman v. Reliance Insurance Co., 1962, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190.

no legal obligation to pay the laborers and materialmen. In the case of the laborers' bond, the surety has promised that they will be paid, not, as in the case of performance bond, that work will be done at a certain price. The law of damages is therefore not pertinent to the payment bond." 332 U.S. at 244, 67 S.Ct. at 1604.

 In Pearlman v. Reliance Insurance Co., 1962, 371 U.S. 132, 138, 83 S.Ct. 232, 236, 9 L.Ed.2d 190, the Supreme Court recognized the well-established doctrine that "a surety who completes a contract has an 'equitable right' to indemnification out of a retained fund." [6] *Munsey* did not disturb this rule, for as the Court noted in *Pearlman*:

> "We held that the Government could exercise the well-established common-law right of debtors to offset claims of their own against their creditors. This was all we held. * * * We hold that *Munsey* left the rule in *Prairie Bank* and *Henningsen* [infra] undisturbed." 371 U.S. at 140, 141, 83 S.Ct. at 237.

The rights of the surety in *Munsey* were those of a subrogee of the contractor. Whoever, be it the contractor or his surety, pays the laborers and materialmen would be a creditor of the government insofar as the retained funds are concerned. *Pearlman* at p. 141, 83 S.Ct.

232. Of course, however, the government has a right to set off claims against its creditors.

 A different situation occurs when the surety completes the performance of a contract. The surety is not only a subrogee of the contractor, and therefore a creditor, but also a subrogee of the government and entitled to any rights the government has to the retained funds.[7] If the contractor fails to complete the job, the government can apply the retained funds and any remaining progress money to costs of completing the job. The surety is liable under the performance bond for any damage incurred by the government in completing the job. On the other hand, the surety may undertake to complete the job itself. In so doing, it performs a benefit for the government, and has a right to the retained funds and remaining progress money to defray its costs. The surety who undertakes to complete the project is entitled to the funds in the hands of the government not as a creditor and subject to setoff, but as a subrogee having the same rights to the funds as the government.[8]

We recognize that our holding is in conflict with that of the Court of Claims in Standard Accident Insurance Co. v. United States, 1951, 97 F.Supp. 829, 119 Ct.Cl. 749. With deference, however, we cannot agree with that decision.[9]

---

6. See Prairie State Nat. Bank of Chicago v. United States, 1896, 164 U.S. 227, 239, 17 S.Ct. 142, 41 L.Ed. 412.

7. Compare the rationale employed in the following opinions: Prairie State Nat. Bank of Chicago v. United States, supra note 5; Henningsen v. United States Fidelity & Guaranty Co., 1908, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; National Surety Corp. v. United States, 1955, 133 F.Supp. 381, 383, 132 Ct.Cl. 724.

8. If the government can set off the amount of the unpaid taxes when the surety has completed the job, the surety would be forced to work for less than the contract price. An equity court should attempt to avoid such an unfair result.

9. Note has been taken that the opinion apparently ignores the rule that an ob-

ligee, as against a surety, may not apply security in satisfaction of a debt other than the one it secured, and the rationale of the case has been criticized as follows:

> "Such reasoning is clearly erroneous in light of (1) the express declaration of *Munsey* granting the surety superiority where there exists a sound basis of subrogation, (2) the accepted principle of equitable subrogation to the rights of the Government where the surety has benefited the Government by assuming the contractor's duty to pay damages, Prairie State [Nat.] Bank [of Chicago] v. United States, 164 U.S. 227 [17 S.Ct. 142, 41 L.Ed. 412] (1896); Hardin County Sav. Bank v. United States, 65 F.Supp. 1017

The same result is reached more directly by the alternative concept that the surety's contract with the government contemplates that the full contract price will be applied to the completion of the contract. Subsequent to the default by Dallas Building, Inc., the surety agreed with the government to take over and complete the principal contract. Implicit in this agreement is the right of the surety to all retained funds and any remaining progress sums. In the words of *Munsey*: "The surety has promised that * * * in the case of performance bond, that work will be done at a certain price." 332 U.S. at 244, 67 S.Ct. at 1604.

We are not convinced that the government, after entering an agreement such as the one in this case, should have a right to retained funds superior to the rights of the surety.[10] If the government undertook to complete the contract, the surety would be liable for costs exceeding the contract price, but not for taxes owed by the contractor.[11] The surety should not be worse off because it undertakes to finish the job. The performance bond is to assure that the government has a completed project for the agreed contract price. The obligation may be performed either in kind or in money. Performance results equally when the surety completes the contract or when the surety pays the government any damage which the government incurs in completing the job. In either event, the surety is entitled to have the full contract price applied to the performance of the contract. The judgment

is therefore reversed and the cause remanded with directions to enter judgment for Trinity.

Reversed.

---

[106 Ct.Cl. 577] (Ct.Cl.1946), and (3) *Munsey's* explicit recognition of the rule regarding diversion of security, 332 U.S. at 243 [67 S.Ct. 1599]."
Reconsideration of Subrogative Rights of the Miller Act Payment Bond Surety, 71 Yale L.J. 1274, 1286.

10. There seems no dispute in the cases that the surety who completes the project has a prior claim to the so-called unearned sums existing when the contractor defaulted. See Massachusetts Bonding & Ins. Co. v. State of New York, 2 Cir. 1958, 259 F.2d 33, 37.

11. See cases cited in note 3, supra. The government's rights to set off funds in its hands is not absolute. See Central Bank v. United States, 1953, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312, where the Court, construing the Assignment of Claim Act of 1940, 54 Stat. 1029, 31 U.S.C. § 203, "so as to carry out the purpose of Congress to encourage the private contracts," held that the government had no right to set off for the taxes owed by the contractor where a financial institution, as an assignee, was seeking proceeds held by the government.