JOHN S. COVINGTON, Judge.
Reliance Insurance Company (Reliance) alleges multiple causes of action against the Louisiana Department of Transportation and Development, Office of Highways (DOTD) in its petition styled “Petition for Breach of Contract, Retainage, Delay and Other Damages”. Reliance alleged, as its sixth cause of action, DOTD’s refusal to pay retained funds after the lien period had lapsed on the highway construction project which ViCon, Inc. contracted with DOTD to perform. Reliance executed its contractor’s Bond No. B952280, as surety, on behalf of ViCon, Inc., as principal, and DOTD, as obligee.
After DOTD put ViCon, Inc. in default, Reliance and DOTD entered into a Take Over Agreement and Reliance performed the contract; DOTD executed its Certifi *249 cate of Satisfactory Completion (Acceptance) on December 3, 1980 and recorded it on December 11 in the official records of Plaquemines Parish. The Clerk and Recorder of Plaquemines’ Lien and Privilege Certificate, issued February 4, 1981, reflected that no liens were filed within the statutory 45 day lien period. Retained funds amounted to $277,447.94.
Attempts to persuade DOTD to pay the retainage to Reliance without Reliance executing an indemnity and hold harmless agreement failed. However, Reliance furnished DOTD the requested indemnity and hold harmless agreement, under protest, on March 16, 1981. Nevertheless, DOTD refused to pay the retainage, either in whole or in part, and this litigation ensued.
The District Court granted Reliance’s motion for partial summary judgment for the retainage plus legal interest from February 4, 1981; the judgment, signed on June 11, 1982, was suspensively appealed by DOTD.
On the basis of DOTD’s Motion to remand, which alleged that serious legal and factual errors produced an inflated judgment, we remanded on May 17, 1983, stating as follows:
Justice would best be served by a remand of this case. We are dealing with an appeal from a partial summary judgment. Many issues are still before the trial court, and it is in a better position to determine the merits of DOTD’s assertion of legal and factual errors. (No. 82 CA 0810).
The Supreme Court denied Reliance’s application for writs of certiorari on June 27, 1983, 435 So.2d 453.
The District Court held another hearing on Reliance’s motion for partial summary judgment on October 28, 1983. At the hearing DOTD submitted the affidavit of its construction auditor, Ronald J. Delaune. The Court’s written reasons for judgment were dated and filed in the record on January 18, 1984 and the judgment awarding the sum of $277,447.94 was signed on January 20,1984. DOTD suspensively appealed the judgment.
DOTD designated the record in the previous appeal, No. 82 CA 0810, and, inter alia, Delaune’s affidavit, the Court’s reasons for judgment and judgment, to comprise the record of its latest appeal.
ASSIGNMENTS OF ERROR
DOTD assigns as error on the part of the District Court its failure to:
1. Recognize the issue of material fact raised by the DeLaune affidavit; and
2. Refer the issues to the merits as called for in the remand order.
DOTD states the issues to be (1) whether the DeLaune affidavit raises any issue of material fact and (2) whether the District Court properly determined the merits of DOTD’s assertion of legal and factual error “as called for in the remand of this case”.
DISTRICT COURT
Judge Daniel W. LeBlanc stated in his Written Reasons for Judgment dated January 18, 1984, in pertinent part as follows:
... In the opinion of this Court, the affidavit [of Ronald J. DeLaune] does not raise any issue of material fact.
The DOTD made its final inspection of this project and found that the project was completed .in accordance with the plans and specifications. The acceptance was filed timely and no liens were filed against the project. Mover’s affidavit showed the amount of the retainage. There was no counter affidavit regarding the amount of the retainage. It was clear to this Court that mover was then, and is now, entitled to the partial summary judgment as prayed for.
If DOTD has overpaid due to a miscalculation, that issue can be raised by amended pleadings and can be decided at the trial on the merits.
TAKE OVER AGREEMENT
On October 4, 1979 DOTD and Reliance entered into a “Take Over Agreement”, which provided, inter alia, that: (1) Re *250 liance complete the project through its designated agents; (2) the contract between DOTD and YiCon, Inc. governs the rights and liabilities of DOTD and Reliance to the extent the first contract is not inconsistent with the Take Over Agreement; (3) DOTD pay Reliance “the balance of the contract price originally provided in the contract” between DOTD and YiCon, Inc. and that the “balance of contract funds ... still unexpended” is $3,004,733.84; (4) “by this Agreement or by operation of law” Reliance “has succeeded to all rights of Vi-Con, Inc. to payment ... under the original contract ... ”; and (5) DOTD agreed “that it will not acknowledge or honor any claims or charges against such funds by any assignees, creditors, or transferees of ViCon, Inc., or any other parties making claim to any such proceeds or balances without consent of” Reliance “or by order of a court of competent jurisdiction after due notice to Surety”.
ENTITLEMENT TO RETAINAGE
DOTD states in its brief that “except for a judgment against ViCon, Inc. in favor of the United States Government, dated July 16, 1980, ... Case No. 80-146 ... for the Eastern District of Louisiana” the Plaque-mines Parish Clerk and Recorder’s “lien certificate was clear”. The foregoing obviously refers to the February 4, 1981 Lien and Privilege Certificate mentioned earlier. Our examination of the record reveals two lien and privilege certificates issued the same day by the same deputy clerk of court; one certificate contains identifying information on the July 16, 1980 Federal Court Judgment against ViCon, Inc. and the other one does not. It is therefore necessary to ascertain the underlying basis of the Federal Court judgment which DOTD urges as its reason for withholding retainage funds from Reliance.
“Case No. 80-146” was in fact Criminal Action No. 80-146, in which ViCon, Inc. pleaded guilty to a 197 count indictment charging, inter alia, ViCon, Inc. with conspiracy to defraud the United States of highway and airport construction, repair and maintenance funds. In Civil Action No. 81-1317, being an application for issuance of garnishment under a writ of attachment, styled “United States of America vs. ViCon, Incorporated”, filed April 2, 1981 in the United States District Court for the Eastern District of Louisiana, the United States alleged, in pertinent part, as follows:
“10.
The Government was informed by a representative of the Louisiana Department of Transportation that his department has possession of and intends to disburse on Friday, April 3,1981, approximately $277,447.90 representing retain-age on a highway contract originally entered into between the Louisiana Department of Highways and ViCon, Incorporated.
The Government is informed that the State intends to pay the retainage to Reliance Insurance Company; however, the Government suggests that ViCon, Incorporated may have some property interest in said funds.
“13.
The amount due the Government under its proposed claim would be no less than . $332,000.00.” (Emphasis ours.)
Reliance’s motion for summary judgment, motion to dissolve writ of attachment, and application for writ of mandamus ordering the release of funds other than DOTD retainage funds, were all denied. Judge Beer, in his reasons for denying the relief Reliance requested, stated, in part, as follows:
.The government has impounded these funds, maintaining it has a right of set off based on the judgments previously rendered against ViCon and/or Reliance [Criminal Action 80-146 and Civil Action 79-4878] as well as the likelihood of a future judgment.
*251 .... Thus, the government has a real and compelling interest in preserving access to funds allegedly due ViCon (but thereafter assigned to Reliance).
... [I]n Criminal Action 80-146, ... ViCon was fined $50,000.00, with a total exposure to fines totaling $100,000.00. To date, no part of this amount has been paid.
Under these circumstances, until such time as an evidentiary hearing can take place in which the question of the ‘alter ego’ relationship between ViCon and Reliance is fully resolved, there should be no release of funds which may be available to satisfy the yet unpaid fines and/or damages imposed against Vi-Con.
ViCon and Reliance seek dissolution of a writ of attachment ... pursuant to which all funds or property of ViCon in the hands of the Louisiana Department of Highways and Development (sic) were seized. ... Thus, the government’s claims against ViCon and Reliance ... could total up to $459,045.34. Under these circumstances, a ruling on this motion should be stayed until an evidentiary hearing takes place in the course of which this court may determine the posture of the various parties in relation to the funds held by the Highway Department. ... Thus, the motion to dissolve the writ is held in abeyance. (Brackets, emphasis, and parenthetical material supplied by us.)
Although Judge Beer’s Reasons are not dated they were filed in the record of the proceedings on May 21, 1982.
Paragraph “3” of the United States’ application for issuance of garnishment specifically identifies seven highway construction and repair contracts, all federal highway projects, which ViCon, Inc. used to defraud the Federal government of highway funds by engaging in “short weighing trucks and printing weigh tickets for nonexistent or ‘phantom’ trucks” thus enabling “ViCon to obtain payments for asphalt that was never ... delivered.” The highway project which is involved in this appeal was State Project No. 62-05-19, Federal Aid Project No. F-GRF-39-02(003) and called for the construction of the Empire-Buras Highway, being Louisiana Highway 23, in Plaquemines Parish; it was not among the seven enumerated highway projects which were utilized by ViCon to defraud the government of highway funds, as alleged in Federal Civil Action No. 81-1317, excerpts of which we have quoted.
From the foregoing recitation it is clear beyond all doubt that the judgment rendered in Federal Criminal Action No. 80-146, the execution of which was sought in Federal Civil Action No. 81-1317, application for garnishment under a writ of attachment served on the Secretary of DOTD, in no way relates to the project which is the basis of the litigation on appeal before us now.
The threshold issue is whether the United States is entitled to set-off its judgment indebtedness against retained funds earned by a performance surety which completes the project pursuant to a Take Over Agreement and as required by the performance bond it issued, after the principal is placed in default by the owner, if the construction project was not one which the principal used as a vehicle for defrauding the United States of federal highway funds.
In United States v. United States Fidelity & Guaranty Co., 328 F.Supp. 69 (D.C. Wash.1971), affirmed, Per Curiam, 477 F.2d 567 (C.A.9, 1973), the United States sought to apply retainage funds toward the payment of the defaulted contractor’s taxes “which are unrelated to the contract involved in this case”. 328 F.Supp. at 70.
The United States let a contract for the construction of facilities for a federal agency to Wells Construction Company (Wells) which furnished both a payment bond and a performance bond as required by federal statutory law. Wells defaulted and refused to continue the work. When the surety refused the United States’ request to complete the contract by performing the remainder of the work, the United States *252 contracted the balance of the work to another contractor who completed the work for less than the unpaid balance due on the contract at time of default; the retainage was approximately one-half Wells’ unpaid “trust fund taxes” owed the United States, an obligation of the surety on its performance bond; the surety contended that it was “ready, able and willing ... to pay ... but upon a payment of such taxes it is entitled to the unpaid balance of the retained ... [funds] without reduction for any ... [taxes unrelated to the contract in this case] due by the contractor to the Government”. 328 F.Supp. at 70. (Bracketed material supplied).
In granting USF & G’s motion for summary judgment, the Court reasoned, in part, as follows:
Under ... Trinity Universal Insurance Company v. United States, 382 F.2d 317 (5 Cir.1967), and Security Insurance Co. of Hartford v. United States, 428 F.2d 838, 192 Ct.Cl. 754 (1970), ... the Government is not entitled to take the unpaid retained percentages and apply them against the payment of the contractor’s [Wells’] non-trust fund taxes [i.e., taxes unrelated to the contract in this case]. 328 F.Supp. at 70. (Brackets supplied.)
In Trinity Universal Insurance Company v. United States, supra, the issue was whether the United States, as owner, may set-off federal taxes owed by the contractor against the surety’s claim to the fund retained by the federal government to insure performance, when the statutory surety completes a defaulted contract pursuant to its performance bond obligation. In a footnote Rives, J., for the Court, stated that: “The record does not disclose whether these taxes arose from the work covered by the contract. We agree with the obvious assumption that that fact was not material.” 382 F.2d at 318.
The surety, under agreement with the government, completed the contract when the contractor defaulted and spent more than the full contract price in doing so. The government deducted the contractor’s federal tax indebtedness from the retain-age and paid the surety the balance. The Federal District Court dismissed the surety’s suit to recover the tax setoff. In reversing the lower court, the United States Court of Appeals for the Fifth Circuit stated, in pertinent part, as follows:
In Pearlman v. Reliance Insurance Co., 1962, 371 U.S. 132, 138, 83 S.Ct. 232, 236, 9 L.Ed.2d 190, the Supreme Court recognized the well-established doctrine that “a surety who completes a contract has an equitable right to indemnification out of a retained fund.” Munsey [United States v. Munsey Trust Co., 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022] did not disturb this rule....
The rights of the surety in Munsey were those of a subrogee of the contractor. Whoever, be it the contractor or his surety, pays the laborers and material-men would be a creditor of the government insofar as the retained funds are concerned. Pearlman [371 U.S.] at p. 141, 83 S.Ct. 232 [at p. 237]. Of course, however, the government has a right to set off claims against its creditors.
A different situation occurs when the surety completes the performance of a contract. The surety is not only a subro-gee of the contractor, and therefore a creditor, but also a subrogee of the government and entitled to any rights the government has to the retained funds. ... [T]he surety may undertake to complete the job itself. In doing so, it performs a benefit for the government, and has a right to the retained funds and remaining progress money to defray its costs. The surety who undertakes to complete the project is entitled to the funds in the hands of the government not as a creditor and subject to setoff, but as a subrogee having the same rights to the funds as the government.
The same result is reached more directly by the alternative concept that the surety’s contract with the government contemplates that the full contract price will be applied to the completion of the *253 contract. [After the contractor defaulted] the surety agreed with the government to take over and complete the principal contract. Implicit in this agreement is the right of the surety to all retained funds and any remaining progress sums. In the words of Mun-sey: ‘The surety has promised that ... in the case of performance bond, that work will be done at a certain price’. 332 U.S. at 244, 67 S.Ct. at 1604.
... The performance bond is to assure that the government has a completed project for the agreed contract price. The obligation may be performed either in kind or in money. Performance results equally when the surety completes the contract or when the surety pays the government any damage which the government incurs in completing the job. In either event, the surety is entitled to have the full contract price applied to the performance of the contract.” 382 F.2d at 320-321. (Brackets and emphasis supplied by us.)
The United States Court of Claims adopted the rationale of the Trinity decision, supra, in Security Insurance Co. of Hartford v. United States, 428 F.2d 838 (Ct.Cl.1970), in granting Security’s motion for summary judgment awarding accumulated retainages under a construction contract with the United States, free from setoff for the defaulted contractor’s employment tax indebtedness incurred before entering into the contract, during its performance, and after it defaulted on the contract completed by the surety. The Court, per Cowen, C.J., stated that:
“The operative facts in Trinity closely parallel those of the instant case,” 428 F.2d at 842
observing in a footnote that:
They differ only in that in Trinity the surety completed performance after having entered into a formal take-over agreement with the Government. As an alternative ground for relief, the court held that implicit in the take-over agreement, was the right of the surety to have the full contract price applied to the completion of the work. 382 F.2d at 321.
and followed through with the statement that “the determinative issue was the same.” 428 F.2d at 842.
Chief Judge Cowen quoted approvingly some of the language excerpted above from Trinity and further reasoned, in part, as follows:
We need only add to the reasoning of the Fifth Circuit [in Trinity ] that it would defeat the purpose of the retainag-es — to assure completion of the contract — to permit setoff against the claims of the completing performance bond surety.

... [PJlaintiff is entitled to recover from the accumulated retainages ... the amount it expended in completing the contract pursuant to the performance bond, free from setoff for the indebtedness of the contractor to the United States....

We believe that this result is in accord with Munsey, and is consistent with the modern trend, as manifested in recent cases and the regulations. Moreover, it avoids the anomalous result whereby the performance bond surety, if setoff were permitted, would frequently be worse off for having undertaken to complete performance. As the Supreme Court noted in Munsey, “a surety would rarely undertake to complete a job if it incurred the risk that by completing it might lose more than if it had allowed the government to proceed." 332 U.S. at 244, 67 S.Ct. at 1604. ... 428 F.2d at 842-844. (Brackets ours.)
In Aetna Casualty and Surety Company v. United States, 435 F.2d 1082 (5th Cir.1970), the court affirmed the lower court’s summary judgment for Aetna, holding the United States was not entitled to set off the defaulted contractor’s federal taxes against retainages. The Court reasoned, in part, as follows:
*254 Only a portion of the taxes in question were directly attributable to jobs bonded by the plaintiff and none were incurred subsequent to the time plaintiff began performance. All such taxes incurred subsequent to the time plaintiff began performance have been paid.
There is no longer any question of the law involved in a situation such as this. Whether the surety entered [into] a specific agreement with the Government to complete the contract, as in Trinity, supra, or made such an agreement with the defaulting contractor, as here, is immaterial. ...
... that payments by a surety which has issued both performance and payment bonds, and which completes performance after default, are under the performance bond even if paid to labor and materialmen, appears clearly from North Denver Bank et al. v. United States, 432 F.2d 466, 193 Ct.Cl. 225 (...1970). ... It is the performance bond which generates the self-interest of the surety to achieve completion when the principal has failed or is failing. ... If the surety completes, it benefits the Government and stands in its shoes as subrogee, not as a mere creditor subject to set off. It may not be penalized by being made liable for the taxes, which otherwise it would not be. 435 F.2d at 1082-1084. (Emphasis supplied.)
Plaintiff-appellee, Reliance, in a thorough and scholarly brief, argues that: (1) the District Court correctly found that the De-Laune affidavit submitted after our remand did not raise an issue of material fact; (2) the question is not whether any facts are disputed but whether there are material facts in dispute; (3) the Take Over Agreement between it and DOTD is a contract between the parties and as such is the law between the parties, thus entitling it to all funds due from the Empire-Buras job as a matter of contract right, free from set off for even a claim for damages sustained by the state as a direct consequence of the defaulting contractor’s performance; (4) whether the government has or may have some claim against a defaulting contractor is no legal basis for withholding retainage funds from the surety who completes the contract it bonded; and (5) once a project has been accepted and the lien period has expired the public owner has a duty, enforceable by mandamus proceedings, to pay the full sum due under the contract to the contractor who performs the contract or to the surety which performs it after the contractor defaults.
We hold that the United States is not entitled to set off its judgment, representing fines and damages growing out of Vi-Con’s defrauding the government out of federal highway funds attributable to projects other than the construction contract forming the basis of this litigation, against retainage held by DOTD, the public owner. We further hold that DOTD is not entitled to set off any claims it has or may have against ViCon, Inc. or Reliance, principal and surety, respectively, growing out of YiCon’s performance before defaulting and the surety’s performing the contract after ViCon’s default.
SUMMARY JUDGMENT
C.C.P. art. 966(B) provides in pertinent part that summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”
DOTD asserts that the counteraffidavit by DeLaune presented a genuine issue as to material fact. We disagree. The affidavit does not address the legal issue of the entitlement of the surety to the retained funds after the surety performs the contract after the contractor has been placed in default by the owner of the project, whether the surety performs the contract personally or by hiring its own contractor, or whether the performance by the surety was pursuant to a formal take over agreement or as it was originally obligated to do by issuing the surety bond.
*255 In Ray v. Associated Indemnity Corporation, 373 So.2d 166 (La.1979), the Supreme Court stated the familiar principle that:
... [A] motion for summary judgment should be granted if, and only if, the pleadings and related filings show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. (citations omitted.) The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for summary judgment, and any doubt is resolved against granting the motion in favor of a trial on the merits. (Citations omitted.) 373 So.2d at 169.
In Capital Bank & Trust Co. v. Wall, 448 So.2d 225 (La.App. 1st Cir.1984), we stated the foregoing rule and elaborated further, as follows:
... However, when a motion for summary judgment is made and supported, the adverse party cannot rest on the mere allegations or denials of his pleadings but must set forth by affidavit or otherwise specific facts that show that a general issue for trial exists. The burden shifts to the opposing party to show that material facts are still at issue, (citations omitted.) 448 So.2d at 226.
We hold, as the lower court held, that the DeLaune affidavit does not raise any issue of material fact as to Reliance’s entitlement to the retained funds. The partial summary judgment was therefore correct.
The partial summary judgment signed June 11,1982, which was the subject of the appeal in 82 CA 0810, stipulated that the $277,447.94 awarded Reliance was to bear legal interest from February 4, 1981 until paid. The partial summary judgment, signed January 20, 1984, which forms the basis of this appeal, made no mention of legal interest. The judgment is accordingly amended to provide that the amount of $277,447.94 shall bear legal interest from February 4, 1981 until paid. C.C.P. art. 2164. DOTD is further cast for all costs of these proceedings in the District Court and in this Court in 82 CA 0810 and 84 CA 0300 in the amount of $1,948.56. The judgment of the District Court is amended, and as amended, affirmed.
AMENDED AND AFFIRMED.