ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| K-Con, Inc. ) | ASBCA Nos. 60686, 60687 |
| ) | |
| Under Contract Nos. W912SV-13-F-0100 ) | |
| W912SV-13-F-0121 ) | |

APPEARANCES FOR THE APPELLANT:    Robert J. Symon, Esq.
                                  Aron C. Beezley, Esq.
                                    Bradley Arant Boult Cummings LLP
                                    Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
                                    Army Chief Trial Attorney
                                    MAJ Christopher M. Coy, JA
                                    Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WOODROW

In these appeals, appellant, K-Con, Inc., claims a total sum of $116,336.56 arising out of two completed construction contracts. K-Con's claim is based on increases in costs for materials and labor due to a two-year delay in the issuance of a notice to proceed after the contracts were awarded. According to K-Con, this delay was due solely to the government's decision to add the performance and payment bond requirements set forth at Federal Acquisition Regulation (FAR) clause 52.228-15, PERFORMANCE AND PAYMENT BONDS – CONSTRUCTION, to each contract. In response, the government contends that FAR 52.228-15 was incorporated into the contracts by operation of law at the time of contract award pursuant to the doctrine set forth in *G.L. Christian & Assocs. v. United States*, 312 F.2d 418, 424, 427, *aff'd on reh'g*, 320 F.2d 345 (1963). Appellant has elected to proceed under the Board's accelerated procedure set forth in Board Rule 12.3.

The sole legal question presented by this appeal is whether the bonding requirements of FAR 52.228-15 were incorporated into Contract Nos. W912SV-13-F-0100 and W912SV-13-F-0121 by operation of law at the time of contract award. We conclude that they were.

FINDINGS OF FACT

On 23 August 2013, the United States Property and Fiscal Office for the State of Massachusetts (Army or government) issued a Request for Quotation (RFQ) No. 815306,

for the design and construction of a laundry facility at Camp Edwards, Massachusetts (R4, tab 3). On 24 September 2013, the government awarded Task Order No. W912SV-13-F-0100 (Contract 0100) to appellant, K-Con, Inc., pursuant to the solicitation (R4, tab 1 at 1). The award was for a firm-fixed-price contract with a total contract value of $305,555.00 (*id.*).

On 5 September 2013, the Army issued RFQ No. 821234, for the construction of a communications equipment shelter at Camp Edwards, Massachusetts (R4, tab 2). On 26 September 2013, the government awarded Task Order No. W912SV-13-F-0121 (Contract 0121) to K-Con, Inc., pursuant to this solicitation. The award was for a firm-fixed-price contract with a total contract value of $356,400.00. (*Id.* at 27)

The contracting officer issued both solicitations utilizing the General Services Administration (GSA) eBuy system. The contracting officer used Standard Form 1449, Solicitation/Contract/Order for Commercial Items for both contracts (R4, tabs 2-3). Neither solicitation included an express requirement that the awardee was to provide performance and payment bonds, nor did the solicitations include FAR clause 52.228-15, PERFORMANCE AND PAYMENT BONDS – CONSTRUCTION.

Contract 0100, for the construction of a laundry facility, contains a contract line item number (CLIN) calling for the "[c]onstruction of a new pre-fabricated metal building at Camp Edwards" (R4, tab 1 at 4). Similarly, the relevant CLIN in Contract 0121 requires the contractor to "[c]onstruct Telecom Hut D" (R4, tab 2 at 30). The statements of work for both contracts include many construction-related tasks, including design and engineering, construction of a concrete building pad and asphalt paving, connections to utilities, installation of a pre-engineered metal structure, and installation of finishes such as flooring, insulation, drywall, painting, and wall covering (R4, tabs 1-2).

On 10 October 2013, after awarding both contracts to K-Con, but before issuing a notice to proceed for either contract, the government requested that K-Con provide performance and payment bonds for both contracts (R4, tab 9; answer ¶ 6). On 22 October 2013, K-Con informed the government that it was unable to provide bonding for the contracts. Instead, K-Con offered to divide each contract into three separate special item numbers within its GSA schedule contract, placing each line item of each contract within the $30,000 to $150,000 range in FAR 28.102(b). According to K-Con, this "tripartite agreement" approach would separately secure each line item, in lieu of providing payment and performance bonds for each entire contract (R4, tab 12 at 103-08).

In an email dated 10 December 2013, the government acknowledged that it "fully understands that K-Con will need to charge the Government for the bonding fees" and required a certified receipt from the surety demonstrating that K-Con had paid for the bonds (R4, tab 12 at 102-03). Subsequently, on 29 January 2014, the government

2

informed K-Con that it would not accept a tripartite agreement for the contracts (R4, tab 13 at 109).

Nearly two years later, on 30 September 2015, K-Con provided the required bonding and the parties modified each contract to increase the total cost to compensate K-Con for the cost of the bonding fees (R4, tabs 26-27).

On 26 January 2016, K-Con submitted a request for equitable adjustment (REA) for each contract, requesting a total sum of $116,336.56 ($53,407.54 for Contract 0100 and $62,929.02 for Contract 0121) (R4, tabs 31, 32). Each REA claimed increases in costs for materials and labor (*id.*). Each REA also offered comparisons of cost documentation between invoices originating prior to K-Con's submission of its offers and information gathered from its subcontractors or suppliers in January of 2016 (*id.*). K-Con also claimed costs for overhead, profit, and "bonding" (*id.*). Lastly, K-Con claimed an entitlement to an equitable adjustment for all cost escalation that occurred during the period between 24 September 2013 and 30 September 2015 as a result of its inability to obtain sufficient bonding (*id.*).

## DISCUSSION

Under the so-called *Christian* doctrine, a mandatory contract clause that expresses a significant or deeply ingrained strand of public procurement policy is considered to be included in a contract by operation of law. *Christian*, 312 F.2d at 424, 427. Application of the *Christian* doctrine turns not on whether the clause was intentionally or inadvertently omitted, but on whether procurement policies are being "avoided or evaded (deliberately or negligently) by lesser officials." *Christian*, 320 F.2d at 351.

To be included in the contract by operation of law, the contract clause must be both mandatory and represent a significant public procurement policy. In this appeal, the bonding requirements of FAR 52.228-15 satisfy both of these requirements. Therefore, we conclude that FAR 52.228-15 must be incorporated into the contracts by operation of law.

## I. FAR 52.228-15 Is Mandatory

We hold that FAR 52.228-15, PERFORMANCE AND PAYMENT BONDS – CONSTRUCTION, is a mandatory clause in a government construction contract. Specifically, both performance and payment bonds are required by statute. 40 U.S.C. §§ 3131-3134 (formerly known as the Miller Act) states, in relevant part:

> (b) Type of Bonds Required. – Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal

3

Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded:

> (1) Performance bond. – A performance bond with a surety satisfactory to the officer awarding the contract, and in an amount the officer considers adequate, for the protection of the Government.

> (2) Payment bond. – A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of the contract unless the officer awarding the contract determines, in a writing supported by specific findings, that a payment bond in that amount is impractical, in which case the contracting officer shall set the amount of the payment bond. The amount of the payment bond shall not be less than the amount of the performance bond.

This statutory provision plainly states that the performance and payments bonds are mandatory when it states that the contractor "must furnish" the bonds. *See Monzo v. Department of Transp., FAA*, 735 F.2d 1336 (Fed. Cir. 1984) (holding that statute stating that petition for review "must" be filed within certain timeframe is mandatory).

The FAR codifies these requirements at FAR 28.102-1, Performance and payment bonds and alternative payment protections for construction contracts, which provides:

> (a) 40 U.S.C. chapter 31, subchapter III, Bonds (formerly known as the Miller Act), requires performance and payment bonds for any construction contract exceeding $150,000, except that this requirement may be waived –

> > (1) By the contracting officer for as much of the work as is to be performed in a foreign country upon finding that it is impracticable for the contractor to furnish such bond; or

4

(2) As otherwise authorized by the Bonds statute or other law.[*]

Although the Miller Act statute and the FAR allow the bonding requirement to be waived in certain circumstances, such as for work to be performed in a foreign country, those circumstances are not present here. 40 U.S.C. § 3131(d); FAR 28.102(a).

Both contracts at issue in this appeal were for the "construction, alteration, or repair of any public building" as that phrase is defined in the Miller Act. The term "public building" has been held to include federally-owned buildings on military bases, based on the rationale that a "public building" is one in which the United States holds title. *See, e.g., United States of America for the Use and Benefit of Empire Plastics Corp. v. Western Casualty & Surety Co.*, 429 F.2d 905, 906 (10th Cir. 1970) (holding that building constructed on property of the United States is a "public building" under the Miller Act). In these appeals, the contracts were for the construction of a laundry facility and communications equipment shelter at Camp Edwards, Massachusetts and, therefore, fall within the definition of "public buildings" (R4, tabs 1-2).

In addition, both contracts at issue in these appeals exceed $150,000 in award price and, therefore, are subject to the requirements of FAR 28.102. Although K-Con offered to enter into a "tripartite agreement" that presumably would avoid this requirement by dividing each contract's single CLIN into three separate special item numbers to fall under the $150,000 threshold, the government rejected this approach (R4, tabs 12, 39).

Appellant cites FAR 28.103-2(c) for the proposition that performance and payment bonds "may" be required and are, therefore, discretionary (app. br. at 2). Appellant does not mention, however, that FAR 28.103 pertains to Performance and payment bonds for *other than construction contracts* (emphasis added). The contracts at issue in these appeals are plainly construction contracts: the relevant CLIN for the laundry facility contract is for the "[c]onstruction of a new pre-fabricated metal building at Camp Edwards" (R4, tab 1 at 4). Similarly, the relevant CLIN in the telecom hut contract requires the contractor to "[c]onstruct Telecom Hut D" (R4, tab 2 at 30). The statements of work for both contracts include a host of construction-related tasks, including design and engineering, construction of a concrete building pad and asphalt paving, connections to utilities, installation of a pre-engineered metal structure, and installation of finishes such as flooring, insulation, drywall, painting, and wall covering (R4, tabs 1-2).

---

* Pursuant to FAR 13.005, domestic contracts below the simplified acquisition threshold of $150,000 are exempt from Miller Act requirements. *See* FAR Part 13 (setting forth simplified acquisition procedures).

5

Appellant additionally asserts, in a footnote to its brief, that the Miller Act does not apply to these contracts, because the contracts were for commercial items (app. br. at 2 n.1). Appellant cites FAR 28.106-4 for this assertion. We disagree, and conclude that FAR 28.106-4 does not render the Miller Act inapplicable to construction contracts, even if those contracts are solicited as commercial items contracts. FAR 28.106-4, Contract clause, states in its entirety:

> (a) The contracting officer shall insert the clause at 52.228-2, Additional Bond Security, in solicitations and contracts when bonds are required.

> (b) In accordance with Section 806(a)(3) of Pub. L. 102-190, as amended by Sections 2091 and 8105 of Pub. L. 103-355 (10 U.S.C. 2302 note), the contracting officer shall insert the clause at 52.228-12, Prospective Subcontractor Requests for Bonds, in solicitations and contracts with respect to which a payment bond will be furnished pursuant to the 40 U.S.C. chapter 31, subchapter III, Bonds (see 28.102-1), except for contracts for the acquisition of commercial items as defined in Subpart 2.1.

Although this provision contains a reference to the Miller Act (40 U.S.C. chapter 31, subchapter III, Bonds), it does not state that the Miller Act is inapplicable to commercial item contracts. By its terms, FAR 28.106-4 pertains to the inclusion of specific contract clauses in contracts that *already include* bonding requirements. Specifically, FAR 28.106-4(a) states that the CO must include the Additional Bond Security clause set forth at FAR 52.228-2, while FAR 28.106-4(b) states that the CO must include FAR 52.228-12, PROSPECTIVE SUBCONTRACT REQUESTS FOR BONDS, in the contract unless the contract is for commercial items.

At issue here, however, is whether these contracts must contain FAR 52.228-15, not FAR 52.228-2. FAR 52.228-2, ADDITIONAL BOND SECURITY pertains to situations in which the contractor already has supplied bonds for the project and the surety or other financial institutions issuing the bond becomes unacceptable to the government. Therefore, we conclude that the Miller Act applies to construction contracts, even when those contracts are solicited as commercial items, and requires those contracts to contain FAR 52.228-15.

Finally, although FAR 28.102-2 allows a contracting officer to reduce the bond requirement in certain circumstances, the contracting officer in this case did not find any circumstances that would authorize a reduction (R4, tab 9). Moreover, the discretion to reduce the bond requirement does not allow the contracting officer to forego the bond

6

requirement altogether. Therefore, we conclude that FAR 52.228-15 was a mandatory clause in the contract.

## II. Bonding Requirements Are Significant Components of Public Procurement Policy

Next, we conclude that bonding requirements are a significant component of public procurement policy. *General Engineering & Machine Works v. O'Keefe*, 991 F.2d 775, 779-80 (Fed. Cir. 1993) (holding that mandatory provisions that "express a significant or deeply ingrained strand of public procurement policy" must be incorporated into the affected contract).

A principal underlying purpose of the payment bond provision of the Miller Act is "to ensure that subcontractors are promptly paid in full for furnishing labor and materials to federal construction projects." *United States ex rel. Acoustical Concepts, Inc. v. Travelers Casualty and Surety Co. of America*, 635 F. Supp. 2d 434, 438 (E.D. Va. 2009). In particular, "the Miller Act provides subcontractors on federal construction projects with the functional equivalent of a mechanic's lien typically available to subcontractors on non-federal projects." *Id.* at 439. Under the doctrine of sovereign immunity, mechanics' liens cannot be placed against public property. *Aetna Casualty and Surety Co. v. United States*, 655 F.2d 1047, 1057 (Ct. Cl. 1981) (citing *Armstrong v. United States*, 364 U.S. 40, 46 (1960)). Therefore, the payment bond is the only protection subcontractors have against the prime contractor's nonpayment.

The purpose of a performance bond is to "assure that the government has a completed project for the agreed contract price." *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 321 (5th Cir. 1967). Indeed, the Miller Act provides protection to the government in situations where the prime contractor defaults in the performance of its work or is terminated for cause. In those situations, the surety either may step in or take over the general contractor's obligations under the prime contract, or may pay the government for the costs incurred by the government in completing the job. *Id.*

Our decision in *Austin Elcon Corp.* illustrates the importance of performance and payment bonds. In *Austin Elcon Corp.*, we held that appellant's provision of a bid bond did not excuse it from timely furnishing performance and payment bonds once the government awarded it a contract requiring such bonds. *Austin Elcon Corp.*, ASBCA No. 26215, 82-1 BCA ¶ 15,718 at 77,763. We stated that the "requirement for performance and payment bonds is substantial and cannot be brushed off as merely 'technical requirement[s] for additional proof of bond' as appellant suggests." *Id.* Further illustrating the importance of adequate bonding is the well-established proposition that the failure to furnish required performance and payment bonds constitutes a breach justifying termination of a contract for default. *Walsh Constr. Co. of Illinois*, ASBCA No. 52952, 02-2 BCA ¶ 32,024.

In sum, we find that, in the context of these contracts for the construction of public buildings, bonding requirements are mandatory and represent a significant component of public procurement policy. Therefore, the bonding requirements set forth in FAR 52.228-15 were considered to be included in the contracts by operation of law pursuant to the doctrine set forth in *Christian*, 312 F.2d 418.

## CONCLUSION

The appeals are denied.

Dated: 12 January 2017

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60686, 60687, Appeals of K-Con, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals