Terry PETTERSEN, David Pettersen, and Lloyd Pettersen, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 424–85C.

United States Claims Court.

June 24, 1986.

Robert M. Halvorson, New Ulm, Minn., for plaintiffs. Gislason, Dosland, Hunter & Malecki, of counsel.

Jonathan S. Baker, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, Thomas W. Peterson, Asst. Director and Ralph Linden, Office of General Counsel, U.S. Dept. of Agriculture, of counsel.

OPINION

ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This action arises from plaintiffs Terry, David and Lloyd Pettersen's participation in the 1984 Feed Grain Program through contracts with the Watonwan County, Minnesota Agricultural Stabilization and Conservation Service (ASCS), acting on behalf of the Commodity Credit Corporation (CCC), an instrumentality of the United States. At issue is whether defendant breached those contracts by declaring plaintiffs ineligible for agricultural price support payments. Both parties move for summary judgment on a stipulated record transferred to this court by the United States District Court for the District of Minnesota.

*Statement of Facts*

Plaintiffs are the operators of two farms located primarily in Watonwan County, Minnesota. On March 8, 1984, they executed contracts with the Watonwan County ASCS (County Committee), acting on behalf of the CCC, to participate in the 1984 Feed Grain Program (Program). These farms were assigned ASCS serial numbers 2–235 and 2–464 for Program purposes.

The 1984 Program was authorized by section 105B of the Agricultural Act of 1949, as amended, 7 U.S.C. § 1444d, and is implemented by the County Committee on CCC's behalf. 15 U.S.C. § 714, et seq. Farmers eligible under the program qualify for commodity loans, as well as deficiency payments, for their corn and grain sorghum crops; for 1984, the deficiency payment was based on the difference between a statutory target price of $3.03 per bushel, 7 U.S.C. § 1444d(b)(1)(C), and the "national average", a price based upon the average price of corn at several locations over a four month period. The amount of the deficiency actually paid for the 1984 crop was 43¢ per bushel.

To participate in the Program, plaintiffs established a corn and grain sorghum acreage base for each farm for the crop year, and agreed to plant no more than their allotted acreage. Plaintiffs' 1984 corn and grain sorghum acreage bases for farms 2–235 and 2–464 were 305 and 1314.9 acres, respectively.

Another requirement of the 1984 Feed Grain Program was acreage reduction, or set-aside. Plaintiffs agreed to reduce their planted acreage by 11.11 percent, so that the maximum acreage that plaintiffs could actually plant on farm 2–235 was 274.5 acres; they agreed to keep 30.4 acres out of production and devoted to approved conservation reserve (ACR). For farm 2–464, the maximum planted acreage allowed was 1183.4 acres, with 124.1 acres to be devoted to ACR.

On July 10, 1984, plaintiffs certified to the County Committee that they had planted 273.5 acres and set aside 31.5 acres for ACR on farm 2–235, and that they had planted 1117.4 acres and set aside 124.5 acres for ACR on farm 2–464. At the time of certification, plaintiffs were informed that they did not have sufficient acreage devoted to ACR. They stated that they would make the necessary adjustments. A visual inspection of farm 2–464 on August 13, 1984 revealed those changes to be insufficient.

On August 23, 1984, the County Committee notified plaintiffs that aerial inspection of farm 2–235 revealed actual ACR of only 22.7 acres, amounting to 8.8 less than reported and 7.7 acres less than required by the Program. The discrepancy amounted to a 25 percent deficiency in ACR, and exceeded the deviation permissible.[1] The County Committee declared plaintiffs ineligible for any payments under the Program for farm 2–235.

On August 28, 1984, the County Committee notified plaintiffs that aerial inspection showed that farm 2–464 measured actual ACR at only 104.0 acres, 20.5 acres less than reported and 20.1 acres less than required by the Program. The 16 percent deficiency exceeded the permissible deviation, and plaintiffs were declared ineligible to receive payments for farm 2–464.

Pursuant to their appeal rights under the contract, plaintiffs received a hearing before the County Committee to discuss the denial of Program benefits on August 29, 1984. As a result of that hearing, the County Committee notified plaintiffs of its determination:

On Farm # 2–464, the corn acres measure 25.6 acres more than you certified. The ACR acres measure 20.5 acres less than certified. On Farm 2–235, the corn acres measure 7.7 more than the certified. The ACR acres measure 8.8 less than the certified acres.

The Committee has carefully reviewed your report of acres again. In light of the fact that you stated that you had not actually measured any of the fields and that the measured acreages vary so much from the reported acres, they have determined a lack of good faith on your part.

Both farms, 2–464 and 2–235, are therefore ineligible for program benefits and a liquidation charge is assessed for not complying with the signed Feed Grain Contract.

Plaintiffs first appealed to the Minnesota State ASCS Office which, after an informal hearing, upheld the County Committee's findings and determination that plaintiffs were ineligible for price supports. Plaintiffs then appealed to the Deputy Administrator, State and County Operations, ASCS, in Washington, D.C. An informal hearing was held on December 11, 1984. The Deputy Administrator, by letter dated January 25, 1985, determined that the State Committee had acted properly. However, because plaintiffs had reduced corn production and "because acreage (although insufficient to earn 1984 program benefits) was taken out of production," the Deputy Administrator waived the assessment of liquidated damages and granted "1984 corn planted and considered planted credit equal to the 1984 acreage base for each of the two farms." That determination concluded plaintiffs' administrative remedies under the contracts.

Plaintiffs filed suit in the United States District Court for the District of Min-

1. Regulations incorporated in the contract permit a deviation, called a "tolerance", of 5 percent or 1 acre, whichever is greater, but not to exceed 50 acres. 7 C.F.R. § 718.6(c)(2).

nesota, seeking judicial review of the agency's determination, and reinstatement to the 1984 Feed Grain Program and payment of full benefits. On July 10, 1985, the district court ordered the case to be transferred to this court. Both parties move for summary judgment, agreeing that there are no disputed issues of fact.

nation by ASCS was arbitrary and capricious and without a rational connection to the evidence. Defendant asserts that the determination by the ASCS was not arbitrary because plaintiffs failed to comply fully with the terms of the contracts and the regulations.

## Contentions of the Parties

Plaintiffs argue that judicial review of government conduct is not precluded by 7 U.S.C. § 1385,[2] relying on *Garvey v. Freeman*, 397 F.2d 600 (10th Cir.1968) and *King v. Bergland*, 517 F.Supp. 1363 (D.Colo.1981), and that the standard of review derives from the Administrative Procedures Act, 5 U.S.C. § 706(2), which provides:

> * * * the court shall hold unlawful and set aside agency actions, findings and conclusions found to be: (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law * * *.

According to plaintiffs, ASCS acted arbitrarily because the only basis for loss of benefits under the contracts is "willful" failure to comply with the contract,[3] and the record nowhere reveals an administrative determination that the plaintiffs willfully overplanted or willfully failed to set aside sufficient ACR. Rather, plaintiff complains, the defendant at most found lack of "good faith" compliance, which is short of the willful failure required.

Defendant argues, pursuant to 7 U.S.C. § 1385, that ASCS' determination that plaintiffs are ineligible for payments is not subject to judicial review; alternatively, defendant argues, if subject to review, the court may only assess whether the determi-

## Discussion

■ This court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to render judgment on claims for money arising out of a contract with the United States, or under a statute or regulation requiring, or fairly interpreted to require, the payment of money. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). *See also Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967). Because plaintiffs request money damages for what they would have earned under their contracts, this court has jurisdiction of the claim.

Defendant argues that the court is precluded altogether from reviewing the determination of the ASCS because of 7 U.S.C. § 1385. However, § 1385 does not pose an absolute barrier. In *Gross v. United States*, 205 Ct.Cl. 605, 618, 505 F.2d 1271, 1279 (1974), the Court of Claims stated that § 1385 precludes judicial review except as to questions of law or where there is allegation and proof that the administrative determination is arbitrary. Furthermore, even accepting all factual findings as conclusive, the court may determine whether a denial of benefits on such facts gives rise to a breach of contract, which is a legal, not a factual, determination.

**2.** 7 U.S.C. § 1385 provides:

The facts constituting the basis for any Soil Conservation Act payment, any payment under the wheat, feed grain, upland cotton, extra long staple cotton, and rice programs authorized by the Agricultural Act of 1949 and this chapter, any loan or price support operation, or amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by

any other officer or agency of the Government. * * *

**3.** Appendix ¶ 11, entitled "LOSS OF BENEFITS" provides:

In addition to assessing any liquidated damages in accordance with paragraph 10 of this appendix, CCC reserves the right to consider the producer to be ineligible for any benefits under the contract when there is a willful failure of any producer to comply with the terms and conditions of the contract and this appendix.

It is the court's view that to determine whether or not defendant acted properly, it is sufficient to analyze whether or not, as the ASCS determined, plaintiffs breached their contracts and relieved CCC from its obligation. If so, then the government's denial of benefits cannot be considered arbitrary and capricious.

■ The contracts are standard form ASCS-477, and provide, in pertinent part: [4]

THIS CONTRACT is entered into between the undersigned operator (referred to as "Operator") and other producers, if any, (referred to as "Producer") on the farm identified above (referred to as "Farm") for the crop(s) identified in columns 8 and 9 below (referred to as "Crop") and the County ASC Committee for the county identified above (referred to as the "County Committee") on behalf of the Commodity Credit Corporation (CCC).

The parties agree as follows for each crop for which participation is indicated in column 9:

1. The operator and each producer on the farm *agree to limit the acreage of the crop,* or both crops in the case of corn and grain sorghum or barley and oats, planted for harvest on the farm to no more than the permitted acreage listed in column 12. The operator and producer(s) *also agree to devote to approved conservation uses and acreage of eligible land on the farm equal to the result of multiplying the percentage factor shown in column 13 times the acres of the crop(s) planted for harvest on the farm.* The land so designated is the "Acreage Conservation Reserve" (ACR) and shall be maintained in conservation uses in accordance with the requirement in paragraph 2 of the Appendix to this contract.

2. The operator agrees to timely file Form ASCS-578 with the County Committee, accurately listing the ACR acreage and the planted acres of the crop(s) planted for harvest on the farm.

3. CCC agrees that the harvested production of the crop shall be eligible for loans and purchases in accordance with 7 CFR Part 1421 and 7 CFR Part 1427. CCC also agrees that *deficiency payments,* if a final deficiency payment rate greater than zero is determined, and other benefits, if applicable, *shall be made in accordance with 7 CFR Part 713.* Deficiency payments shall be divided according to the shares for the crop shown in columns 3–6 of this form and paragraph 6 of the Appendix to this contract.

4. The operator and each producer on the farm and CCC agree to comply with the terms and conditions specified in the Appendix to this contract. [Emphasis added.] [5]

The contract provides that payments shall be made in accordance with Part 713. Three provisions of Part 713 are pertinent:

§ 713.1 Applicability.

(a) The regulations in this subpart, which are applicable to the feed grain,

---

**4.** Plaintiffs argue that this court may not consider the contracts in their entirety, because certain portions, i.e. the first eight pages of the 1984 Appendix to the contracts, were "not considered by the ASCS" and our review is limited to the administrative record. Defendant has provided the affidavit of Thomas A. VonGarlem, Assistant Deputy Administrator, State and County Operations, ASCS, who states that he rendered the decision denying the Pettersens program benefits, and that the complete copy of the contract appendix was inadvertently omitted from the record compiled for this action. Plaintiff has not disputed this allegation by affidavit or otherwise.

**5.** The 1984 Appendix to form ASCS-477, receipt of which plaintiff acknowledged, *inter alia,* incorporates the following regulations of 7 C.F.R. into the contract: 713, 13, 707, 709, 718, 780, 790, 791, 795, 1403. In addition, ¶ 9B of the Appendix provides:

A producer who is determined to have erroneously represented any fact affecting a program determination with respect to this contract and appendix shall not be entitled to payments under the crop program for which the representation was made and the producer shall refund to CCC all payments received by such producer with respect to the farm and the crop and be subject to liquidated damages.

rice, cotton, and wheat programs for the 1984 and subsequent year crops, set forth the terms and conditions under which producers of these commodities who enter into contracts with Commodity Credit Corporation (CCC) and comply with the contracts and the provisions of this subpart may qualify for program benefits.

§ 713.49   Nature of contract.

(a) The contract shall provide that the operator and each producer on the farm shall agree to limit the acreage of the crop planted for harvest and devote an eligible acreage of land to approved conservation uses as may be required by the commodity program for the crop as announced by the Secretary and as provided for in this subpart. * * *

§ 713.103   General payment provisions.

(a) *Issuance.*   Payment of any amount due the operator or other producers on a farm shall be made only after the producers are determined to be in compliance with the contract and these regulations.

(b) *Failure to comply fully.*   Except as otherwise provided herein and in Part 791 of this chapter, as amended, *payment shall not be made for a farm or to a producer when there is a failure to comply fully* with the regulations set forth in this subpart and in part 718 of the chapter. [Emphasis added.]

It is clear that, contrary to plaintiffs' contention, ¶ 11 is not the only provision governing the loss of benefits, and that loss of benefits may result from other than

willful non-compliance.   In fact, § 713.112 (reiterated at ¶ 9B of the contract appendix) [6] makes explicit that plaintiffs' *erroneous* representation of ACR acreage was sufficient cause to deny them Program benefits.

The contracts require compliance with the Feed Grain Program as a condition precedent for the payment of benefits. Nowhere do the contracts or the regulations waive the condition because the producers' failure to comply was not willful but merely negligent or lacking in good faith.

Plaintiffs' admission that they erroneously reported the planted and ACR acreages, that they exceeded the allowable planting acreage and that they failed to set aside sufficient ACR acreage (in excess of the 5 percent tolerance) suffices to support the conclusion that plaintiffs failed to comply with the Program requirements and, as a result, were ineligible for payments pursuant to the contracts and 7 C.F.R. § 713.103. The court holds that defendant did not breach any obligation, or act in an arbitrary and capricious manner, when it declared plaintiffs ineligible for deficiency payments.

Under section 7 C.F.R. § 791.2,[7] which implements 7 U.S.C. § 1444d(f), the Deputy Administrator is authorized to grant *equitable* relief in such amounts as the Deputy Administrator determines to be equitable in relation to the seriousness of the failure.   That discretionary relief requires a finding of a "good faith" effort to comply

---

6.   7 C.F.R. § 713.112(a) provides:

(a) A producer who is determined by the county committee or the State committee to have erroneously represented any fact affecting a program determination shall not be entitled to payment under the crop program with respect to which the representation was made and shall refund to CCC all payments received by the producer with respect to such farm and such crop program and shall be liable for liquidated damages in accordance with the contract.

7.   7 C.F.R. § 791.2 provides:

In any case in which the failure of a producer to comply fully with the terms and conditions of any program to which this part

is applicable precludes the making of loans, purchases, or payments, the Deputy Administrator, State and County Operations, may, nevertheless, authorize the making of such loans, purchases or payments in such amounts as determined to be equitable in relation to the seriousness of the failure.   The provisions of this part shall be applicable only to producers who made a good faith effort to comply fully with the terms and conditions of the program and rendered substantial performance.   Any person who feels that he or she is entitled to consideration under the provisions of this part may file a request therefor with the County Committee.

fully with the terms and conditions of the program. This necessarily implies that a producer is *not entitled* to program benefits if he has failed to comply fully with its terms and conditions even if he has acted in good faith and rendered substantial performance. In this case the Deputy Administrator did grant plaintiffs equitable relief under this section and plaintiffs are not entitled to more.

To the extent that plaintiffs may challenge the Deputy Administrator's finding as to what was equitable in relation to the seriousness of the failure to comply with the program, review by this court is precluded by 7 U.S.C. § 1385. *See Pope v. United States*, 9 Cl.Ct. 479 (1986).

Plaintiffs' motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED. The Clerk is directed to dismiss the complaint.