WASHINGTON INTERNATIONAL
INSURANCE CO., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 490–88C.

United States Claims Court.

April 17, 1989.

Edward M. Joffe, Miami, Fla., for plaintiff. Sandler, Travis & Rosenberg, of counsel.

M. Martha Ries, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Alphonso Robles and Glenda Drinkhahn, U.S. Customs Service, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument and supplemental briefing on defendant's contested motion to dismiss for lack of subject matter jurisdiction.

## FACTS

The following facts are well pleaded and undisputed. Washington International Insurance Company ("plaintiff") is a corporate surety authorized by the United States Customs Service ("Customs") to write single-entry bonds used by importers to gain entry of merchandise into the United States. During 1984 plaintiff issued approximately 46 entry bonds for Philip Leemack, d/b/a S & P Trading ("Leemack"), securing payment of customs duties and liquidated damages in the event Leemack should default.

Pursuant to 19 U.S.C. §§ 66, 1623, 1624 (1982), Congress has delegated to the Department of the Treasury ("Treasury") the

power to prescribe rules and regulations to effect laws raising revenue from imports and to require bonds to protect the revenue to be raised and assure compliance with law. Treasury promulgated the regulating matrix governing the importation of foreign merchandise in 19 C.F.R. §§ 142, 172 (1984). 19 C.F.R. § 142.4 provides that prior to obtaining release of merchandise from Customs, the importer must post a bond securing the payment of required duties. Liquidated damages are assessed if the importer fails to comply with Customs' regulations governing the importation of merchandise.

According to 19 C.F.R. § 142.12(b), if the importer chooses not to file the entry summary documentation, *i.e.*, documentation other than that held to secure the release of the imported merchandise and that is used to assess duties at the time of entry, the importer must file the summary and pay estimated duties within ten working days after the time of entry. 19 C.F.R. § 142.15 provides, in pertinent part:

> If the entry summary documentation is not filed timely, the district director shall make an *immediate demand* for liquidated damages in the entire amount of the bond in the case of a single entry bond....

(Emphasis added.) 19 C.F.R. § 172.1, entitled "Notice of liquidated damages incurred and right to petition for relief," mandates that

> (a) ... [w]hen there is a failure to meet the conditions of any bond posted with Customs, the principal shall be notified in writing of any liability for liquidated damages incurred by him and a demand shall be made for payment. *The sureties on such bond shall also be advised in writing, at the same time as the principal, of the liability for liquidated damages incurred by the principal.*

(Emphasis added.)

Customs has the right, in the event an importer repeatedly is delinquent in the payment of duties, to require filing of entry summary documentation and estimated duties prior to release of the importer's merchandise. 19 C.F.R. § 142.14(a) provides, in pertinent part:

> The importer shall be advised in writing by the regional commissioner of Customs for the region in which he is substantially or habitually delinquent that he shall file the entry summary documentation with estimated duties attached, before his merchandise may be released from Customs custody in that region....

Plaintiff is surety on 46 bonds posted to secure 46 entries of merchandise made by Leemack through the Port of Miami, Florida, between February 14, 1984, and March 20, 1986. The 46 bonds can be grouped into seven categories, distinguishable by both the dates on which Customs notified plaintiff of Leemack's delinquency and the nature of the importer's violation. Plaintiff maintains that at no time before notification was it aware that Leemack had failed to comply with Customs' regulations. The gist of plaintiff's complaint is that Customs' failure to make timely demands for liquidated damages or require Leemack to file its entry summaries and to deposit duties before release of its merchandise and Customs' failure to notify plaintiff of Leemack's default, breached Customs' obligations under the bonds.

On January 31, 1986, 15 months after entry of the merchandise, Customs issued a notice of liquidated damages or penalty incurred for failure to file the entry summary documentation and deposit estimated duties within ten working days. This notice covered eleven entries. Plaintiff paid these estimated duties on April 7, 1986, and timely filed a protest of these demands which is still pending within Customs. *See* 19 U.S.C. § 1514(c). It should be noted that judicial review of protest actions by Customs must be sought exclusively in the Court of International Trade. 28 U.S.C. § 1581(a) (1982). Next, Customs initiated a late-filing case against the importer without notifying plaintiff. After the importer failed to make the required payments, Customs demanded late payment fees from plaintiff. Plaintiff's protest regarding these additional demands is still pending. Additionally, on October 2, 1987, plaintiff

received a demand for $95,416.01 for loss of revenue under 19 U.S.C. § 1592(d), which provides, in pertinent part:

[I]f the United States has been deprived of lawful duties as a result of a violation of subsection (a) of this section, the appropriate Customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed.

Plaintiff has not paid this demand.

On January 2, 1986, over two years after the entry of the merchandise, plaintiff received a demand for increased duties on two entries, stemming from Leemack's improper classification of goods on Customs' import schedule. Plaintiff paid the increased duties on July 14, 1986, and filed a protest. Then, on October 31, 1986, Customs demanded additional interest, which plaintiff paid, and which amount plaintiff added to its protest.

On September 23, 1986, two and one-half years after the entry of merchandise, Customs made a formal demand of plaintiff for liquidated damages arising from Leemack's failure to timely file entry summaries and to pay duty amounts for four entries. Plaintiff offered to pay mitigated damages and Customs accepted. On October 24, 1986, alleging that the required documentation was never filed and estimated duties never paid, Customs notified plaintiff of a new claim for liquidated damages covering the same four entries. Plaintiff filed a timely petition, which is still pending, to cancel the second assessment.

On September 23, 1986, over two years after the entry of merchandise, Customs notified plaintiff of its formal demand for liquidated damages incurred and demand for payment stemming from Leemack's failure to file entry summaries and pay estimated duties for eleven entries. Plaintiff timely paid the estimated duties, but filed a petition requesting cancellation of the liquidated damages. This protest is still pending. Additionally, on October 2, 1986, Customs sent a demand to plaintiff, in the amount of $62,800.98, citing plaintiff's liability for Leemack's violation of 19 U.S.C. § 1592. Plaintiff has not paid this demand.

On September 23, 1986, over two years after the entry of merchandise, Customs notified plaintiff of its formal demand for liquidated damages involving four entries because of Leemack's failure to file entry summaries and pay estimated duties. Plaintiff reviewed the entry documents and discovered that Leemack had submitted all of the required documentation and paid all estimated duties, but had done so in an untimely fashion. Thus, plaintiff filed a petition to cancel the original penalty and asked that Customs issue a new petition in accordance with guidelines for late filing of entries. Approximately one year later, Customs denied plaintiff's request, charging that Leemack's original check had bounced. On December 1, 1987, plaintiff paid estimated duties for each of the four entries. In addition, plaintiff filed a petition on December 7, 1987, seeking cancellation or mitigation of the liquidated damages amount. Customs mitigated the amount on three of the four entries; plaintiff's petition for the fourth entry is still pending.

On October 31, 1986, over two years after the entry of merchandise, Customs demanded payment of delinquent amounts due for increased duties on ten entries arising out of Leemack's incorrect identification of its merchandise on the classification schedule. Plaintiff paid the required amounts and filed a protest, which is still pending, to contest the penalties.

On December 18, 1987, over three years after entry of the merchandise, plaintiff received notice of Customs' demand for increased duties on four entries because Leemack had entered merchandise under an incorrect provision of the classification schedule. Plaintiff has not paid any of these claims.

Plaintiff commenced suit in the Claims Court for a refund of $77,570.70 paid to Customs on the surety bonds and liquidated damages in connection with seven entries, declaratory relief absolving plaintiff from future payments on its bonds, and rescission of the bonds and restitution of

all moneys paid under the bonds. Only claims based on express or implied-in-fact contracts can come before the Claims Court. *E.g., Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 674, 428 F.2d 1241, 1255–56 (1970). Defendant asks for dismissal on multiple grounds, although its argument concerning the Claims Court's jurisdiction to hear contract claims is determinative.

## DISCUSSION

### 1. *Subrogation*

■ The traditional means of asserting a surety's claim against the Government is under the equitable doctrine of subrogation. *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1161 (Fed.Cir.1985). Under the theory of subrogation, a surety is entitled to sue the Government directly to recover, "either from retainage or from sums paid after notice of the surety's interest, amounts the surety has spent on performance or paid to laborers and materialmen." *Fidelity & Deposit Co. v. United States*, 14 Cl.Ct. 421, 422 (1988). Retainage exists when the Government holds money, still unexpended, which it has no right to keep. Ordinarily, had the contractor paid all of its obligations and finished the contract, the Government would owe this money to the contractor. However, when the contractor fails in the performance of its duties, thereby obligating the surety to step in and complete the contract, the Government, with adequate notice, must retain the funds and assume the role of stakeholder. *See Balboa*, 775 F.2d at 1161–62; *United States Fidelity & Guar. Co. v. United States*, 201 Ct.Cl. 1, 7–8, 475 F.2d 1377, 1380–81 (1973). A subrogation claim arises when a contractor defaults under the contract, and the surety, in accord with its performance and payment bonds, becomes obligated to the Government. "When the surety then finances the contract to completion, it is subrogated to the contractor's property rights in the *contract balance*." *Balboa*, 775 F.2d at 1161 (emphasis in original; citations omitted).

In the present case, plaintiff contends that it was subrogated to rights of the importer Leemack, the principal that failed to comply with Customs regulations. As a result plaintiff became obligated to pay certain import duties to Customs, and the principal was able to continue importing goods into the country. Thus, it appears that plaintiff has financed these contracts to completion. However, the analogy to a traditional subrogation theory stops here. First, Customs is not acting as a stakeholder. Customs neither possesses the principal's physical property, nor owes money yet unpaid under the contract. Second, plaintiff is not stepping into the shoes of the principal, asserting the rights of the importer against Customs. Plaintiff, in fact, is attempting to press its own rights. Thus, plaintiff's claim based on subrogation must fail.

### 2. *Privity*

■ In addition to plaintiff's argument that it be subrogated to the claims of the importer, plaintiff asserts that it is in privity of contract with Customs. It is clear that a suretyship forms a tripartite agreement. Customs does not usually sign or actively negotiate the terms of performance bonds, although

> it is nevertheless the primary beneficiary of the surety's obligation. Pertinent to the foregoing, the Court of Appeals for the Federal Circuit stated that "A suretyship is the result of a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee (the government).... [A]nd no suretyship exists in the absence of any of the three parties." *See Balboa*, 775 F.2d at 1160; *see also Universal Surety Co. v. United States*, 10 Cl.Ct. 794, 799 (1986).

*Travelers Indemn. Co. v. United States*, 16 Cl.Ct. 142, 152 (1988). Recognizing that the traditional remedy of a surety agreement of the bond is subrogation, *Balboa* nonetheless broadens the surety relationship by suggesting that "it is conceivable that under certain circumstances a surety could assert rights against the Government under the third-party beneficiary rule, or

even as one in privity in contract with the Government...." *Balboa,* 775 F.2d at 1160–61 (citations omitted). However, courts have limited the surety's ability to assume privity of contract with the Government to those situations wherein "[w]ith the existence of a takeover agreement ... 'the surety, in effect, becomes the contractor, subject to the terms of the new agreement.'" *Travelers,* 16 Cl.Ct. at 153 (quoting *Universal Surety Co. v. United States,* 10 Cl.Ct. 794, 800 (1986)); *see also Carchia v. United States,* 202 Ct.Cl. 723, 735, 485 F.2d 622, 628–29 (1973) (completing surety that had executed takeover agreement had standing to sue government on the takeover contract).

The court in *Travelers* specifically limited its holding to those situations in which a takeover agreement has been executed between the Government and the surety. Judge Gibson distinguished cases such as *United States v. Seaboard Surety Co.,* 817 F.2d 956 (2d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 161, 98 L.Ed.2d 115 (1987); *Fidelity & Deposit Co. v. United States,* 14 Cl.Ct. at 422; and *Universal Surety Co. v. United States,* 10 Cl.Ct. at 799–80, wherein privity was not found absent a takeover agreement. *Travelers,* 16 Cl.Ct. at 153.

In the present case, plaintiff and Customs did not execute a takeover agreement. Thus, in the absence of a takeover agreement, plaintiff cannot contend successfully that after Leemack's default plaintiff became a contractor with the same privity as Leemack.

During oral argument plaintiff requested permission to file a supplemental brief addressing the issue of privity. The court granted plaintiff's request. In its supplemental brief, plaintiff asserts that the surety, importer, and Government all share privity of contract based on the surety bonds. Plaintiff relies on a decision of Customs for the proposition that

> [a] surety is one who engages to be responsible for the debt or default of another. Every suretyship contract involves three parties: (1) the one for whose account the contract is made, whose debt or default is the subject of the transaction, and who is called the principal; (2) the one to whom the debt or obligation runs, the *obligee in suretyship,* called the creditor; and (3) the one who agrees that the debt or obligation running from the principal to the creditor shall be performed, and who undertakes on his own part to perform it if the principal does not, called the surety.
>
> The contract of suretyship is an undertaking to answer for the debt, default, or miscarriage of the principal by which the surety becomes bound in the same manner as, and equally with, the principal. It differs from a guaranty, which is a collateral undertaking to pay in the event the debtor does not pay.

*C.S.D. 81–3,* 15 Cust. B. & Dec. 752 (1980) (emphasis added) ("*81–3*"). The question thus becomes, what is the status of an "obligee in suretyship?" If such status gives rise to mutual obligations running between the surety and the Government, then the Government is not a mere third-party beneficiary and owes a duty to the surety.

The issue in *81–3* was whether a surety on a customs bond had the right to petition for relief from a fine incurred under any law administered by Customs or from a claim for liquidated damages. The Customs decision stated that "[i]n view of the fact that the law generally regards the surety's obligation to be the same as and coextensive with that of the principal, we interpret section 172.1 of the Customs Regulations to give both the principal and the surety the right to petition for relief." 15 Cust. B. & Dec. at 753. A fair reading of the opinion demonstrates that Customs was only talking about the right of a surety to have its petition for relief "treated in exactly the same manner as a petition for relief from the principal," *id.,* which is uncontested here, and in no way obviated the requirement of a surety to prove privity of contract in order to sue the Government.

Plaintiff also relies on *Eli Witt Co. v. State Department of Revenue,* 2 B.R. 487 (Bkrtcy.M.D.Fla.1979), for the proposition that the Government was more than a

third-party beneficiary in the suretyship relationship. In *Eli Witt* the principal under a surety contract was attempting to limit the rights of the State of Florida to those of a third-party beneficiary in order to prevent the State from denying the effectiveness of notices cancelling the bonds under which the debtor was benefiting. According to plaintiff, the court expressly held that the state was not a third-party beneficiary, but, rather, was in privity of contract with the surety. However, even in the short passage of the opinion which plaintiff quotes in its brief, plaintiff points to no language which acknowledges the existence of privity:

> The contract involved in this controversy is suretyship. The surety is bound to the obligee, not to the principal, for the payment of a sum of money or for the performance of some duty or promise; the surety is said to be an insurer of the debtor's obligation. Since the surety contract is made at the same time and jointly with the principal, the surety has a *direct and original* agreement with the creditor....
>
> The "creditor" or "obligee" is the person who may enforce payment or performance by either the principal or surety. The creditor or obligee in this case is the State of Florida, which has the right to collect tax stamps against either Aetna or Eli Witt, jointly and/or severally....
>
> All three parties executed the contract in which two promisors or obligors, Aetna and Eli Witt, jointly and severally promised to pay cigarette stamp taxes to the promisee or obligee, the State of Florida.

2 B.R. at 491 (citations omitted; emphasis in original).

Defendant's response to plaintiff's supplemental brief characterizes the holding of *Eli Witt* in a light which the court finds more acceptable. According to defendant, "these bonds are an undertaking by the surety to pay if the importer does not...." Def's Br. filed Mar. 27, 1989, at 4 n. 5. Thus, the Government acts as an obligee, or third-party beneficiary, under the bonds to ensure that the Treasury has adequate protection:

The Court held that the State, as an obligee under the bonds, had enforceable rights against both the debtor and the surety and that the debtor was estopped from denying that the bonds were properly cancelled.

Whether the Government is labelled as a third party beneficiary or as an obligee under the bonds here, this case does not support plaintiff's contention that there is an express contract the terms of which were breached by the Government. Plaintiff still has not proffered any authority for suit against an obligee or a third party beneficiary to a surety bond in which there is no explicit or implicit promise to notify the surety immediately upon the importer's default.

*Id.* at 5 n. 6.

Plaintiff has made a strong argument that the surety bond is a tripartite contract redressable by the surety against the Government. However, plaintiff has failed to marshal case law for the proposition that privity flows from the characterization of the contract as tripartite.

### 3. *Customs' regulations*

■ As previously discussed, the importation of foreign merchandise is regulated by 19 C.F.R. §§ 142, 172. 19 C.F.R. § 142.4 provides that prior to obtaining release of merchandise from Customs, the importer must post a bond securing the payment of required duties and, if necessary, liquidated damages. According to 19 C.F.R. § 142.12, if the importer chooses not to file the entry summary documentation at the time of entry, the importer must file the summary and pay estimated duties within ten working days after the time of entry. Plaintiff points out, and defendant acknowledges, that 19 C.F.R. § 172.1 instructs Customs to notify in writing both the importer and the surety of any liability for liquidated damages incurred by the importer/principal. Assuming, *arguendo*, that the surety agreement constitutes a contract between plaintiff and Customs, the question thus becomes whether Customs' failure to timely alert plaintiff to the flaws in Leemack's import documentation

procedure constitutes a breach of Customs' duty, giving rise to a claim over which this court has jurisdiction.

This court continues to hold that, in general,

the Government will be held to have obligated itself in contract only upon a showing of an express or implied-in-fact agreement to do so. This formidable standard serves to protect the fisc from all suits under contract claims except where the evidence guarantees with some certainty that the Government has agreed to waive its sovereign immunity. *See United States v. Testan*, 424 U.S. 392 [96 S.Ct. 948, 47 L.Ed.2d 114] ... (1976).

*Nutt v. United States*, 12 Cl.Ct. 345, 351 (1987), *aff'd sub nom. Smithson v. United States*, 847 F.2d 791 (Fed.Cir.1988), *cert. denied,* —— U.S. ——, 109 U.S. 782, 102 L.Ed.2d 774 (1989). Statutes and regulations do not *per se* create legal rights against the Government, unless money-mandating, although the Government may include any number of promises to conduct itself in a certain way. If the Government then fails to act accordingly, it may become liable for damages for breach of contract. *See Nutt*, 12 Cl.Ct. at 351 (citing, *inter alia, Dahl v. United States*, 695 F.2d 1373, 1376, 1381 (Fed.Cir.1982)).

In *Nutt* this Court pointed out that whether or not a statute or regulation has been incorporated into a contract, so as to bind the Government, depends on the specificity of the incorporating language. 12 Cl.Ct. at 351. In *Pettersen v. United States*, 10 Cl.Ct. 194, *aff'd mem.*, 807 F.2d 993 (Fed.Cir.1986), for example, the

language incorporating the regulations was very precise: "The operator and each producer on the farm and CCC agree to comply with the terms and conditions specified in the Appendix to this contract." *Pettersen*, 10 Cl.Ct. at 198. Second, the regulations included in the appendix were specific and limited in number, as opposed to a wholesale incorporation of all applicable regulations.

*Nutt,* 12 Cl.Ct. at 352. The incorporating language relied upon by plaintiffs in *Nutt* read: "This agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions hereof." 12 Cl.Ct. at 353. Thus, this court was able to distinguish *Nutt* from *Pettersen* on the ground that the incorporating language relied upon by the plaintiffs in *Nutt* was too broad. This court concluded that it was

unreasonable to infer that the FmHA meant to obligate itself in wholesale fashion to comply with each FmHA regulation or risk breach of contract damages. Absent both an en masse incorporation of regulations and express or implied contractual promises by the FmHA to evaluate loan applications according to some time schedule, the Smithsons' breach claim based on timeliness must fail.

12 Cl.Ct. at 353 (footnote omitted).

In the present case, plaintiff fails to make a convincing argument that the regulations have been incorporated expressly into the surety agreement. Most significant is the fact that the bond does not specifically mention the notice provision, 19 C.F.R. § 172.1. In addition, the bond does not reference the notice provisions. Therefore, even assuming the requisite privity, plaintiff has failed to state a claim upon which relief might be granted. The court acknowledges that had Customs notified plaintiff of Leemack's improprieties, plaintiff might have avoided significant losses. Indeed, the record shows administrative inattention to regulations, which, if Customs had followed, would have avoided pyramiding plaintiff's losses, coupled with Customs' delay in resolving plaintiff's protests. Absent an express or implied-in-fact contract, however, this court is without jurisdiction and unable to hear the case.

## CONCLUSION

Based on the foregoing, defendant's motion is granted * on the grounds that plaintiff has neither subrogation rights against

---

\* Since the complaint fails to come within the Claims Court's jurisdiction, it is unnecessary to address the other three grounds upon which defendant asks for dismissal of the complaint.

Customs nor privity with Customs. The Clerk of the Court shall dismiss plaintiff's complaint for lack of subject matter jurisdiction.

No costs.