FIDELITY & DEPOSIT COMPANY OF MARYLAND, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 562–87C.

United States Claims Court.

March 9, 1988.

J. Michael Franks, Nashville, Tenn., for plaintiff. Manier, Herod, Hollabaugh & Smith, of counsel.

**422**

Sheryl L. Floyd, with whom were Acting Asst. Atty. Gen. James M. Spears, David M. Cohen, and Mary Mitchelson, Washington, D.C., for defendant. Ralph E. Avery, Office of the Judge Advocate General, Dept. of the Army, of counsel.

## ORDER

BRUGGINK, Judge.

Fidelity & Deposit Company of Maryland ("Fidelity") brings this action in its capacity as surety for Virginia E. Ellis d/b/a/ Lester Ellis Plumbing and Heating Co. ("Ellis"). Pending before the court is defendant's motion to dismiss for lack of jurisdiction. The issue has been briefed and orally argued. For the reasons set out herein, the court grants defendant's motion and dismisses the action without prejudice.

## BACKGROUND [1]

On July 27, 1985, the Government, acting through the Department of the Army, awarded a contract to Ellis for the replacement of condensate lines at Fort Campbell, Kentucky. Contemporaneously, Fidelity issued performance and payment bonds pursuant to the Miller Act, 40 U.S.C. §§ 270a–270d (1982). After performance had commenced, the Government terminated the contract for default by notice dated September 9, 1986. The notice asserts that, with ninety-two percent of the work completed, radiographic tests revealed that a majority of welds were improperly done and had been concealed. By letter dated September 17, 1986, Fidelity was notified of the termination. The Government asked to meet with representatives of Fidelity to "determine how you wish to dispose of the remaining work." The complaint recites that Ellis has remained ready to complete performance on the contract, but that defendant has required completion by Fidelity pursuant to the bond.

As grounds for relief, Fidelity asserts that the termination was an abuse of discretion and constituted a breach of contract with Ellis and a violation of defendant's equitable duty to Fidelity. For relief, Fidelity seeks the following: (1) reversal of the decision to terminate Ellis, (2) an order allowing Ellis to complete, (3) an award of Fidelity's costs caused by the breach of contract and violation of equitable duties, and (4) a declaration that the bond is void.

## DISCUSSION

It is clear from the complaint, briefing, and oral argument that Fidelity has not taken over the contract, has not paid any materialmen or laborers, and has not made any payments to defendant. The only costs incurred are legal expenses on its own behalf. In short, Fidelity has not satisfied any obligations on its performance or payment bonds. This suit attempts to set aside the default termination as to Ellis so as to preclude the necessity of Fidelity's performance on the bonds.

In its present posture, the case is not amenable to review in this court for a number of reasons. First, Fidelity does not fall within the ambit of the equitable doctrine of subrogation. Under this theory, Fidelity would be entitled to sue the Government directly to recover, either from retainage or from sums paid after notice of the surety's interest, amounts the surety has spent on performance or paid to laborers and materialmen. Through the doctrine of subrogation, it would succeed to the rights of the contractor or of the laborers and materialmen against the Government. *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1161 (Fed.Cir.1985); *United States Fidelity & Guaranty Co. v. United States,* 201 Ct. Cl. 1, 9–10, 475 F.2d 1377, 1382 (1973). Fidelity, however, does not seek a recovery from retainages held by defendant. It does not allege that it has expressly or impliedly taken over performance or assumed obligations under the payment or performance bonds. This court has held that there is no privity of contract between a surety and the Government in the absence of an express or implied assumption of contract performance. *See Home Indemnity Co. v. United States,* 180 Ct. Cl. 173, 177, 376 F.2d 890, 893 (1967);

1. The facts are taken from the complaint and are assumed to be correct.

*Universal Surety Co. v. United States*, 10 Cl. Ct. 794, 799–800 (1986). Fidelity therefore lacks standing.

■ To demonstrate standing without reliance upon traditional subrogation theory, Fidelity makes what it concedes to be the novel contention that the performance bond itself and events leading up to its execution [2] created an implied contract directly between itself and the Government. Although this theory is not articulated in the complaint, it appeared in Fidelity's brief, and was most clearly presented during oral argument. In sum, Fidelity contends that the performance bond creates an implied contract, the relevant terms of which are that the Government promises not to act in a way that is prejudicial to Fidelity. This argument is merely a recasting of the equitable doctrine of subrogation in contract terms. Plaintiff provides no support for this approach, and the court declines to adopt it.

■ For similar reasons, Fidelity's argument that its action arises under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613 (1982), fails. The CDA presumes the existence of privity of contract, which, as explained above, does not exist, at least not yet. As the court specifically held in *Universal Surety*, the non-completing surety is not a contractor within the meaning of the CDA. 10 Cl. Ct. at 800.

■ In any event, the court does not have authority to grant Fidelity the relief it currently seeks—a declaration of respective rights and obligations. The court's source of relevant jurisdiction, 28 U.S.C. § 1491(a)(3) (1982), contemplates such relief in contract actions only in limited circumstances not present here.[3] Declaratory relief must be associated with and subordinate to a monetary claim. *See McEniry v. United States*, 7 Cl. Ct. 622, 625, *aff'd*, 785 F.2d 323 (1985); *Wheeler v. United States*, 3 Cl. Ct. 686, 688 (1983). The particular relief sought here—a declaration that the default termination was improper—was held to be beyond the court's jurisdiction with respect to the contractor itself. *Industrial Coatings, Inc. v. United States*, 11 Cl. Ct. 161 (1986); *see Gunn–Williams v. United States*, 6 Cl. Ct. 820 (1984). *A priori* the same would be true of a surety that does not stand in privity of contract with the Government.

■ Even if the present action could be cast by the surety as one under the CDA, defendant correctly argues that it would have to be dismissed as premature because of the absence of a claim filed with the Contracting Officer. *Prefab Prods., Inc. v. United States*, 9 Cl. Ct. 786, 789 (1986). This defect merely highlights the fact that in the absence of any performance on the bonds, or a claim by the Government for reprocurement costs, this action was brought too soon.

*Ohio Casualty Insurance Co. v. United States*, 12 Cl. Ct. 590 (1987), cited by plain-

2. The court previously granted defendant's motion to suspend discovery pending resolution of the motion to dismiss. Plaintiff opposed on the ground that discovery is necessary to respond to the motion to dismiss. Defendant's motion to dismiss is based on the facts alleged in the complaint, along with its attachments. While plaintiff's theory of recovery shifted somewhat during briefing and oral argument, discovery is nevertheless not warranted. The only issue on which Fidelity believes discovery would be useful is to prove the existence of meetings and discussions leading to an implied contract between it and the Government. Even assuming such meetings took place, Fidelity stated during oral argument that the best evidence of an implied contract was the performance bond itself. Plaintiff is, in effect, rearguing the legal issue of whether the bond can be construed as creating an enforceable contract between Fidelity and the Government. Having concluded that it cannot, discovery would be pointless.

3. During oral argument, Fidelity argued that this subsection applies because the Government is about to reprocure performance of the balance of the contract, and Fidelity now wishes to undertake such performance. This is somewhat inconsistent with the complaint. More importantly, however, that provision has been construed to require the existence of a solicitation and the submission of a bid, on the theory that the action is premised on an implied contract to fairly and honestly consider bids. *ATL, Inc. v. United States*, 736 F.2d 677, 682 n. 17 (Fed.Cir. 1984); *A & C Bldg. and Indus. Maintenance Corp. v. United States*, 11 Cl. Ct. 385, 388 (1986). In the present case, there has not been a solicitation, much less a bid, in connection with the reprocurement.

tiff, is not contrary to any of the conclusions here. In that case, the surety was allowed to challenge defendant's failure to terminate the prime contractor for default earlier than it actually did. The surety, however, incurred substantial costs in paying for contract completion. Fidelity also cites *Argonaut Insurance Co. v. United States*, 193 Ct. Cl. 483, 434 F.2d 1362 (1970). The court there does state, as Fidelity points out, that "the Government has a duty to exercise its discretion responsibly [in determining whether to terminate] and to consider the surety's interest...." 193 Ct.Cl. at 495, 434 F.2d at 1368. Unlike the surety here, the plaintiff in that case had paid the contractor's payroll for two weeks. Consequently, the case merely recognizes the doctrine of subrogation. The decision in *Royal Indemnity Co. v. United States*, 208 Ct. Cl. 809, 529 F.2d 1312 (1976), is distinguishable on the same basis. There the surety had met one or more payrolls, the contractor had executed an assignment of rights to future contract payments to the surety, and there was "joint control" of the construction in the surety and the contractor.

CONCLUSION

None of the circumstances critical to relief under either the equitable doctrine of subrogation or the direct access provisions of the CDA are present here. Plaintiff is not without recourse, however. If it performs on the bonds, or takes over the contract, or if the Government reprocures and seeks additional costs from Fidelity, it can make its argument here that the termination was improper. None of those circumstances having occurred, the court does not have jurisdiction. The Clerk is directed to dismiss the complaint without prejudice. No costs.