**WESTECH CORPORATION and Fireman's Fund Insurance Co., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 726–88C.

United States Claims Court.

July 2, 1990.

---

Charles D. Ablard, Washington, D.C., for plaintiffs. Paul Scott Kelly, Jr. and Stephen B. Sutton, Kansas City, Mo., of counsel.

George M. Beasley, III, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. For purposes of this motion, the court will accept plaintiffs' allegations as true and draw all reasonable inferences in plaintiffs' favor. *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

## FACTS

In March of 1982, the United States, through the Department of the Army, awarded the Westech Corporation a contract for $5,892,000 to build a pressure recovery system for the High Energy Laser System Test Facility (HELSTF) at White Sands Missile Range, New Mexico. A completion date was set for August 24, 1983. Fireman's Fund Insurance Co. became the surety pursuant to the Miller Act, 40 U.S.C. §§ 270a–270d (1976), and issued a $5,892,000 performance bond and a $2,500,000 payment bond. Both bonds named Westech as principal and the United States as obligee.[1]

Defendant provided Westech with construction plans for the pressure recovery system which included the design specifications of certain condenser/scrubbers and steam jet injectors. After studying the plans, Westech concluded that the performance specifications of the scrubbers and steam jet injectors could not be met using defendant's design. Therefore, on June 10, 1982, Westech wrote to defendant to explain the design problems and to request direction how to proceed. Defendant responded to Westech's letter by stating merely that the plans were being studied and that defendant would notify Westech how to proceed at a later date.

In July of 1982, Westech submitted alternative design specifications for the condenser/scrubbers, steam jet injectors, and various other components of the pressure recovery system. Some months later, but before defendant made any response, Westech sent defendant two additional letters. One requested a reply to its design submissions and the other advised defendant of its delay in not responding. Defendant finally responded to these submissions in early January of 1983, but stated only that it had taken no action. In mid-January of 1983, Westech again wrote to defendant complaining of the delay. Defendant responded to the latter complaint by stating that a decision would be made within ten days. On February 3, 1983, eight months after the issue had been initially raised, defendant directed Westech to begin construction using the original plans.

On February 8, 1983, Westech advised defendant that the government-caused delays were viewed as material and substantial changes to the original contract and that defendant's order to meet the original August 24, 1983 completion date was considered an acceleration order. On April 14, 1983, Westech requested an extension of the August deadline for 240 days. Defendant allowed 36 days. Westech did not consider the 36–day extension an equitable adjustment to its 240–day extension request, and advised defendant that the new order to complete by September 30, 1983 was also an acceleration order. Defendant denied that the new order constituted acceleration but, nonetheless, offered to reimburse Westech for all reasonable costs incurred in meeting the September 1983 deadline.

In September of 1983, defendant made several changes to the contract and extended the completion date to December 31, 1983. Prior to the latter extension, Wes-

---

1. Fireman's Fund was before this court on the same contract under a prior motion for partial summary judgment in *Fireman's Fund Insur-*

*ance Co. v. United States,* 15 Cl.Ct. 225 (1988). The issues presented in the 1988 case are not the same as those here.

tech had experienced cash flow problems that eventually required Fireman's Fund, as surety, to make payments to Westech's subcontractors. Thereafter, Fireman's Fund requested that defendant not make any payments to Westech without their consent. This request was honored and defendant withheld the December progress payment.

Two weeks before the December 31, 1983 completion date, Westech abandoned the project. On December 29, 1983, after giving Westech and Fireman's Fund notice, defendant terminated the contract for default. Shortly thereafter Westech ceased doing business. Due to the urgent need to complete the project, defendant requested Fireman's Fund to resume work no later than January 9, 1984. Fireman's Fund could not comply in the short time period allowed and defendant awarded a reprocurement contract to another firm. Fireman's Fund was assessed for reprocurement costs in excess of the original contract price. The reprocurement contractor substantially completed the contract work in April of 1984.

On June 22, 1984, Fireman's Fund, on behalf of Westech, submitted a claim to the contracting officer for the recovery of delay and acceleration damages.[2] The claim was certified by Westech's on-site project manager who we are told, and assume, was the senior company official at the job site. The contracting officer denied the claim and plaintiffs filed suit in this court.

## DISCUSSION

■ Congress has defined this court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1988), to encompass only those claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in

tort." 28 U.S.C. § 1491(a)(1) (1988); *see Aetna Casualty & Sur. Co. v. United States*, 655 F.2d 1047, 1051, 228 Ct.Cl. 146 (1981). Nothing in this Act, however, creates, in and of itself, a substantive right of recovery against the United States. Rather, the Act merely vests the Claims Court with jurisdiction when such a right independently exists. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). A claimant must look beyond the Tucker Act to discover and plead a money-mandating predicate upon which to complete jurisdiction. *Connolly*, 716 F.2d at 885.

Plaintiff, Fireman's Fund, has looked to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988), for independently existing rights over which this court may exercise jurisdiction.[3] Defendant's challenge to plaintiffs' claims is that they do not fall within the ambit of the CDA. Specifically, defendant has asserted: (a) the court does not have jurisdiction over the claim of Fireman's Fund, as surety, under the CDA; (b) the court does not have jurisdiction over Fireman's Fund through the doctrine of subrogation or estoppel; and (c) the court does not have jurisdiction to hear Westech's claim due to an improper certification. The court will examine defendant's allegations seriatum.

## A. *Jurisdiction Under the CDA to Hear a Surety's Claim for Breach of Contract Damages*

■ The legislative history of the CDA indicated that its purpose and design was to provide a comprehensive system for adjudicating contract claims against the government. S.Rep. No. 1118, 95th Cong., 2d Sess. 16, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235 [hereinafter *Legislative History* ]. In order to ensure

---

**2.** The delay claim included delays associated with the design specifications as well as several delays caused by being required to temporarily evacuate the job site to allow for missile test firings.

**3.** Fireman's Fund could not make, and expressly waived, any claim under the theory of assignment. Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15 (1988).

the smooth administration of claims, facilitate negotiation, and suppress frivolous claims, the CDA provides strict and specific parameters within which claims against the government may be brought. *Legislative History, supra,* at 5250–51. For example, the CDA allows only a "contractor" to appeal the decision of a contracting officer. 41 U.S.C. § 609(a)(1) (1988). "Contractors" are statutorily defined as parties "to a Government contract other than the Government." 41 U.S.C. § 601(4) (1988). Since government contracts are procured through "a single point of contact," a "contractor" for jurisdictional purposes has been limited to the prime contractor with certain "court made" exceptions not pertinent here.[4] For this court to exercise jurisdiction over Fireman's Fund's claims, Fireman's Fund must first be determined to have been a contractor with the government under the CDA. *But see* section B, below. This would require Fireman's Fund to have entered into a contract with the government. 41 U.S.C. § 601(4) (1988). A government contract includes agreements for: "(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property." 41 U.S.C. § 602(a) (1988). Although plaintiffs argued that Fireman's Fund was in fact a party to the contract with the government, Fireman's Fund was not. The surety signed no contract with defendant and there is evidence from the plain language of section 602(a) that the services contracted for and/or performed by Fireman's Fund, as a surety, do not fit within those agreements deemed "contracts" with the government. *United States v. Seaboard Sur. Co.,* 817 F.2d 956, 961 (2d Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 115 (1987); *Fidelity & Deposit Co. of Md. v. United States,* 14 Cl.Ct. 421, 423 (1988). Since the CDA requires that the contract sued upon be a government contract, 41 U.S.C. §§ 601(4), 602(a), it does not apply to a bond issued by a surety to a contractor. *Universal Sur. Co. v. United States,* 10 Cl.Ct. 794, 800 (1986). Thus, Fireman's Fund was not a "contractor" entitled to maintain a claim under the CDA.

### B. *Jurisdiction of a Surety Through Subrogation or Estoppel*

Although Fireman's Fund may not bring a claim directly under the CDA, this does not automatically close the door for a surety's suit against the government. Had Fireman's Fund executed a takeover contract with defendant to complete the contract, it would have standing to sue. In fact, under that circumstance Fireman's Fund could even challenge the propriety of defendant's prior actions including the decision to terminate for default. *See Carchia v. United States,* 485 F.2d 622, 628–30, 202 Ct.Cl. 723 (1973); *Travelers Indem. Co. v. United States,* 16 Cl.Ct. 142, 153 (1988); *Universal Sur. Co. v. United States,* 10 Cl.Ct. 794, 800 (1986). A surety may also bring suit if its claims fit within the narrow parameters of equitable subrogation. *See, e.g., Balboa Ins. Co. v. United States,* 775 F.2d 1158 (Fed.Cir.1985).

Equitable subrogation has been allowed when a surety finances a project to completion after default of the prime contractor. *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 136–37, 83 S.Ct. 232, 234–35, 9 L.Ed.2d 190 (1962); *Universal,* 10 Cl.Ct. at 797. By financing the government's project to completion, the surety is equitably allowed to maintain a claim when normally it would lack standing to sue the government. *See Travelers,* 16 Cl.Ct. at 152–54. The recovery available under equitable subrogation, however, has been limited to funds held by the government, or funds improperly disbursed to a third party, only to the amount of the contract balance. *Balboa,* 775 F.2d at 1161, 1163; *Travelers,* 16 Cl.Ct. at 153; *Universal,* 10 Cl.Ct. at 797. In the instant case, Fireman's Fund has not asked for relief allowable under subrogation, *i.e.,* the recovery

---

**4.** For example, subcontractors are allowed indirect access to sue the government if "sponsored" by the prime contractor. *Legislative History,* *supra,* at 5250; *see, e.g., United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1551 (Fed.Cir. 1983).

of funds held by the government or the retrieval of improper disbursements.[5] Instead, Fireman's Fund has sought standing to recover for delay and acceleration damages suffered by Westech. As noted above, a surety's recovery of such damages suffered by a contractor is simply beyond the scope of equitable subrogation. *See Travelers*, 16 Cl.Ct. at 153 ("[T]he right to sue the government over the construction contract [is] limited to the contractor."); *see also Universal*, 10 Cl.Ct. at 797–98. Moreover, to expand equitable subrogation to allow a surety to assert a contractor's claims would, in effect, be allowing an assignment of a claim against the government in violation of the Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15 (1988). *See, e.g., Produce Factors Corp. v. United States*, 467 F.2d 1343, 1348, 199 Ct.Cl. 572 (1972); *Thomas Funding Corp. v. United States*, 15 Cl.Ct. 495, 502 (1988).

In the alternative, Fireman's Fund contended that there was no difference between a completing surety and one that merely pays for completion costs. If this argument held true, Fireman's Fund should be allowed to sue for damages under the prime contract without a takeover agreement. However, this argument was based on isolated statements from several cases which, when taken in context, do not support the position stated by Fireman's Fund. Fireman's Fund relied on a statement in *Trinity Universal Insurance Co. v. United States*, 382 F.2d 317, 321 (5th Cir.1967), *cert. denied*, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 873 (1968), to conclude that a completing surety and a paying surety should be treated equally since "[p]erformance results equally when the surety completes the contract or when the surety pays the government any damage which the government incurs in completing the job." This conclusion, however, is simply not supported by *Trinity*. The *Trinity* court dealt specifically with retained percentages and not with the right of a surety to sue on behalf of its contractor for damages allegedly caused by the government. *See Trinity*, 382 F.2d at 318–19.

Fireman's Fund also relied on a statement from the decision of the United States Court of Appeals for the Federal Circuit in *Balboa*, cited in *Travelers*, 16 Cl.Ct. at 152, which stated that "a surety, as bondholder, is as much a party to a Government contract as the contractor." Fireman's Fund's reliance on this statement is likewise misplaced. The *Balboa* court, in making this statement, was distinguishing between the rights of a surety and those of a subcontractor or materialman to recover an improperly paid progress payment. *Balboa*, 775 F.2d at 1160. There was no implication in *Balboa* for creating nonexistent rights in the surety. *Balboa* explicitly recognized that the "means of asserting a surety's claim is under the equitable doctrine of subrogation." *Id.* at 1161. In addition, *Travelers* acknowledged the separate and distinct natures of completing sureties and paying sureties in its statement that a completing surety with a takeover agreement "possesses greater rights to sue the government than might a non-completing surety." *Travelers*, 16 Cl.Ct. at 153. These "greater rights to sue the government" arise because of the privity between the surety and the government resulting from a takeover agreement. Under a complete reading of these cases, it is evident that a paying surety cannot maintain the prime contractor's claim for damages allegedly caused by the government. Regardless, Fireman's Fund argued that it should be treated as if it were a completing surety because it had been willing to complete the project but the government's actions prevented it from doing so. While it may be true that a surety under a performance bond generally has an option to either complete or pay for the government's excess completion costs, *Security Ins. Co. of Hartford v. United States*, 428 F.2d 838, 841 n. 6, 192 Ct.Cl. 754 (1970); *Seaboard*, 817 F.2d at 959, it does not necessarily follow that a surety has an absolute right

**5.** The issue of retainages was addressed previously by this court in *Fireman's Fund Insurance Co. v. United States*, 15 Cl.Ct. 225 (1988).

to one method of performance over another. The purpose of a performance bond is to "assure that the government has a completed project for the agreed contract price." *Trinity*, 382 F.2d at 321. Thus, the import of a surety agreement is that the surety performs, not how it chooses to perform. Defendant gave Fireman's Fund notice of Westech's default and requested it to begin performance. Although Fireman's Fund did not receive defendant's telegram until six days before the performance deadline, notice had been given and all avenues of performance had not been foreclosed.

■ Fireman's Fund's final argument was based on estoppel. It argued that defendant knew that Westech had an outstanding claim against the government that Fireman's Fund had no knowledge of. Having this knowledge, Fireman's Fund asserted that the "Government intended that Fireman's Fund would act on its statement that the Government would complete the project and charge the surety with all the completion costs without giving it a reasonable opportunity to complete the project." Fireman's Fund, therefore, concluded that it was damaged because it would have taken action to formally enter into a takeover agreement and preserve Westech's claim had it known of the claim. The court cannot accept this line of reasoning. Defendant had no duty to inform the surety of claims which the contractor may have had. The surety contract defined the obligations of each party to the contract; thus, Fireman's Fund was on notice from the inception of the agreement. Under the terms of the latter contract, defendant was merely in the position of a third-party beneficiary. To require defendant to inform the surety of potential claims against the government would essentially take management of the suretyship out of the hands of the surety and place it into the hands of the government. This was not the purpose of the surety agreement; the purpose of the surety agreement was simply to ensure completion of the government's project. *See Trinity*, 382 F.2d at 321.

Accordingly, this court will not hold defendant responsible to Fireman's Fund under the doctrines of subrogation or estoppel.

### C. *Certification of Westech's Claim*

■ Defendant's last ground for dismissal was that Westech's claim was not properly certified. To properly submit a claim for certification, the contractor must submit a claim signed by the contractor which accurately reflects the contractor's estimated value of the case. 41 U.S.C. § 605(c) (1988). The Federal Circuit has stated that "[u]nless the contractor has submitted a properly certified claim to the contracting officer, there is no valid claim...." *Ball, Ball & Brosamer, Inc. v. United States*, 878 F.2d 1426, 1428 (Fed.Cir.1989); *Paul E. Lehman, Inc. v. United States*, 673 F.2d 352, 355, 230 Ct.Cl. 11 (1982). This court must strictly construe the certification provisions of the CDA. *See Ball*, 878 F.2d at 1426–29 (chief cost engineer could not validly certify under 48 C.F.R. § 33.207(c)(2) (1988)); *W.H. Moseley Co. v. United States*, 677 F.2d 850, 851–52, 230 Ct.Cl. 405, *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982) (economist's appraisal of claim amount not valid for certification).

If the contractor is an individual, the claim must be signed by the individual. 48 C.F.R. § 33.207(c)(1) (1988). If the contractor is a corporation, the claim must be signed by: "(i) A senior company official in charge at the contractor's plant or location involved; or (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs." 48 C.F.R. § 33.207(c)(2) (1988). It is not disputed that plaintiffs here are corporations and that the on-site project manager certified Westech's claim. In support of this certification, plaintiffs asserted that they complied with 48 C.F.R. § 33.207(c)(2)(i) because the certifying officer was the senior company official at the construction site. The court, however, finds that the certifying officer did not have authority to properly certify Westech's claim at the time of certification.

In *Triax Co. v. United States*, 20 Cl.Ct. 507, 512 (Cl.Ct. May 25, 1990), this court recognized that circumstances may arise when the senior official at the job site may no longer be qualified to certify a claim. The *Triax* contractor had certified its claim after its work force had been demobilized. The only remaining functions to be performed by the contractor were administrative tasks at the home office. The court did not specifically address the question of whether a senior official at the job site could have certified the contractor's claim, but, in dicta, it did conclude that demobilization of the work force in and of itself did not automatically preclude proper certification by the senior, on-site company official under 48 C.F.R. § 33.207(c)(2)(i). In the present case, however, there was an additional factor which tipped the scales against proper certification. In addition to Westech's work force having been demobilized, the purported certifying official for Westech on the job site was no longer an employee of the contractor. At the time of certification, Westech was no longer in business and the purported "certifying" officer of Westech was employed by a consultant retained by Fireman's Fund.

Two purposes of the certification requirement are to reduce the submission of unwarranted claims and to encourage settlements. *Folk Constr. Co. v. United States*, 226 Ct.Cl. 602, 604 (1981). The certification requirement reduces frivolous and unwarranted claims by holding the contractor personally liable for misstatements or miscalculations in its certification. *Ball*, 878 F.2d at 1429. In the present situation, had there been a mistake or miscalculation in the certification, the court would have no recourse against Westech based on the belated assertions of a former employee. Therefore, a significant purpose of the certification requirement would be circum-

vented were the court to allow Westech's former on-site officer to certify its claim.

Because Westech had no employees that qualified under section 33.207(c)(2)(i), the claim should have been certified by a senior officer having overall responsibility for the conduct of the remainder or residue of Westech's affairs. 48 C.F.R. § 33.207(c)(2)(ii) (1988); *See Triax*, slip op. at 512–513. Plaintiffs, however, failed to allege that the purported certifying officer had overall responsibility for Westech's conduct at the time of certification. Although Fireman's Fund did assert that at the time of certification "no one had more authority" than that individual to certify the claim, this in and of itself does not satisfy the overall responsibility required by section 33.207(c)(2)(ii). Plaintiffs' mere assertion that Westech's former employee acted as an agent of Westech at the time of certification, and was thus, authorized to certify the claim, is unavailing. The fact remains that he no longer worked for Westech and that a fiduciary or employer/employee relationship no longer existed between them. As a former employee, he was not subject to control by Westech, nor was Westech responsible for his assertions. Since the certification cannot be viewed as effective, the subsequent ratification by Westech's president of that certification was likewise ineffective.[6] Courts have consistently required that claims be properly certified at the time of their submission. *E.g., W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed.Cir.1983); *W.H. Moseley*, 677 F.2d at 852. A faulty certification cannot be cured by subsequent ratification of the faulty act. *See W.M. Schlosser*, 705 F.2d at 1338; *Aeronetics Div., AAR Brooks & Perkins Corp. v. United States*, 12 Cl.Ct. 132, 138 (1987). Plaintiffs' also relied on *Transamerica Ins. Co. v. United States*, 6 Cl.Ct. 367 (1984), in support of ratification. However,

---

**6.** On September 19, 1989, the Chancery Court for the State of Delaware appointed Mr. Alan R. Cunningham trustee of Contrech, Inc., the 100% shareholder of Westech. Mr. Cunningham then appointed himself director and president of Westech on September 26, 1989. As president of Westech, Mr. Cunningham attempted to rati-

fy the authority of the former senior on-site supervisor to certify a claim on the behalf of Westech. This ratification took place after the institution of this suit and more than five years since the claim was originally certified by the former officer.

*Transamerica* is factually distinct from the case at bar. In *Transamerica,* the court allowed a claim certified by a "Bond Claim Attorney" after a subsequent affidavit verified that the signer met the requirements of 48 C.F.R. § 33.207(c)(2)(ii). *Transamerica,* 6 Cl.Ct. at 370. In that case, the person signing the claim had authority to certify at the time of certification. In the present action, Westech's former senior, on-site officer did not have authority to certify at the time of certification. Therefore, his certification was not valid.

■ Finally, plaintiffs asserted that Westech was enabled by the Georgia Business Corporation Code to carry out business "necessary to wind up and liquidate its business and affairs" and, therefore, the certification should be sufficient. Ga.Code Ann. § 14–2–1405 (1989). It is true that the Georgia Business Corporation Code does provide for winding up corporate affairs; however, the broad and general provisions of Georgia's Business Code cannot be viewed so as to circumvent the federal CDA certification requirements. *See generally Transamerica,* 6 Cl.Ct. at 371 ("[F]ederal contracts are controlled by federal law, and not state law").

## CONCLUSION

After careful review of the claims of Westech and Fireman's Fund, it is evident that the court lacks jurisdiction over their claims. It appears that Westech could properly certify its claim and possibly place itself within the jurisdiction of the court. The statute of limitations might intervene to preclude jurisdiction even if the claims are ultimately properly certified but the court will not address that issue except in passing. It is equally evident that the court has no subject matter jurisdiction over the delay and acceleration claims presented by Fireman's Fund and that jurisdiction cannot be perfected under any conceivable circumstance by Fireman's Fund. Therefore, defendant's motion to dismiss is allowed and the Clerk is directed to dismiss the complaint as to Westech

without prejudice, and as to Fireman's Fund with prejudice. No costs.

IT IS SO ORDERED