**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–45 C.

United States Court of Federal Claims.

July 12, 1994.

Robert G. Watt, McLean, VA, of record for plaintiff.

Carol J. Bennett, with whom were Asst. Atty. Gen. Frank W. Hunger, Director David M. Cohen, Asst. Director Thomas W. Petersen, Dept. of Justice, Washington, DC, for defendant.

## OPINION

### I

WIESE, Judge.

Plaintiff is a surety that had filed an earlier suit in this court contesting the Government's default termination of a construction contract on which plaintiff was secondarily liable under a performance bond. That suit was dismissed for lack of jurisdiction, the gist of the ruling being that, in the absence of any payment on the performance bond or the expenditure of any funds pursuant to a

"takeover" agreement with the Government, plaintiff could neither claim the status of a subrogee nor assert any contractual right of its own; hence, there was no contract basis upon which the suit could proceed. *Fidelity & Deposit Co. of Maryland v. United States,* 14 Cl.Ct. 421 (1988).

Fidelity is once again before this court seeking to challenge the same default termination that was the subject of its earlier suit. And, as before, it has not paid out any funds under its performance bond nor has it entered into a separate contract with the Government for the completion of the work. Nevertheless, it insists that, this time around, its case rests on a jurisdictionally solid footing. Defendant, on the other hand, contends that the picture has not changed at all and that the case is no more amenable to resolution now than before. Accordingly, defendant has again moved to dismiss. For the reasons discussed below, we grant defendant's motion.

## II

Plaintiff's argument in favor of jurisdiction begins with certain language in the prior opinion where the court said, by way of conclusion, that "[p]laintiff is not without recourse, however. If it performs on the bonds, or takes over the contract, *or if the Government reprocures and seeks additional costs from Fidelity,* it can make its argument here that the termination was improper." 14 Cl.Ct. at 424 (emphasis added). Referring to the emphasized text, plaintiff points out that the jurisdictional prerequisite it recites—the Government's reprocurement and demand for additional costs from Fidelity—has been fulfilled. Specifically, plaintiff refers to its receipt of a demand letter from the contract-

ing officer—received after the court's earlier decision was handed down—seeking payment of damages and excess reprocurement costs in the amount of $1,010,729.66, pursuant to plaintiff's obligation as performance bond surety. The letter goes on to describe the demand for payment as "the final decision of the contracting officer" and it informs plaintiff that an appeal of the decision may be taken either to the Armed Services Board of Contract Appeals or the United States Claims Court. Thus, based both on the quoted language of the earlier court decision and the contracting officer's directive, plaintiff maintains this suit may now proceed. The court disagrees.

■ To bring itself within the ambit of the Tucker Act, 28 U.S.C. § 1491 (1988) (the court's basic jurisdictional statute), a government contract surety must demonstrate the existence of a contract-based right to sue here. That right may rest either on the equitable doctrine of subrogation, *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1161 (Fed.Cir.1985) or, alternatively, on a contract right of its own, *Fireman's Fund Ins. Co. v. United States,* 909 F.2d 495, 499 n. (Fed.Cir. 1990). Plaintiff can satisfy neither basis for jurisdiction.

■ As already noted, plaintiff has not paid out any funds under its performance bond and therefore has no equitable basis upon which to assert the right to stand in place of the principal obligor (the defaulted contractor). It is "[w]hen the surety ... finances the contract to completion, [that] it is subrogated to the contractor's property rights in the contract balance." *Balboa Ins.,* 775 F.2d at 1161.[1] Not having financed the

1. In its traditional formulation, subrogation identifies the rule of law that places a party that has satisfied another's debt in the shoes of the one whose claim has been paid. *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947). "In the suretyship context, subrogation provides a secondary obligor [the surety] who performs the secondary obligation with the obligee's rights with respect to the underlying obligation as though that obligation had not been satisfied." Restatement (Third) of Suretyship § 23 comment a (Tentative Draft No. 2, 1993).

In government contract law, however, subrogation is a term of expanded usage. When a surety completes the performance of a contract, the surety is considered to be not only a subrogee of the Government and entitled to any rights the Government may have with respect to retained funds but also a subrogee of the contractor, and therefore a creditor. *Trinity Universal Ins. Co. v. United States,* 382 F.2d 317, 320 (5th Cir.1967), *cert. denied,* 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 873 (1968). "[W]hen a surety finances completion of a project, it confers a benefit upon the government by relieving it of the task of completing performance itself. It therefore be-

contract to completion, plaintiff cannot claim the status of a subrogee. Similarly, since plaintiff has not contracted with the Government to complete the work in its own right, it lacks any independent basis by which to satisfy the jurisdictional prerequisite to privity. Plaintiff's only status here is that of a promisor owing a duty, under its contract with the primary obligor (the default contractor), to hold the Government harmless. At this juncture, that is its only connection with the Government.

■ As to the argument plaintiff draws from the prior court opinion, the answer is that plaintiff is wrong in interpreting the quoted language to mean that a formal demand for payment by the contracting officer is enough to establish Tucker Act jurisdiction. The entire thrust of the prior opinion is directed towards the necessity for privity as a basis for jurisdiction; hence, the language relied upon may only be read in that light. Properly construed, the quoted language does no more than recognize a surety's right to challenge a default termination here *after* it has met the Government's demand for payment of excess reprocurement costs.

■ Moving on to the other part of the argument—that the right to sue here is established by the contracting officer's decision—the short answer to this contention is that the contracting officer was not correct in identifying this court as an appropriate forum to hear Fidelity's challenge to the reprocurement demand. A surety that has not made payment pursuant to its obligation, or entered into a separate takeover agreement with the Government, is not a party to a Government contract and hence is not a contractor within the meaning of section 601(4) of the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1988). *Universal Surety Co. v. United States*, 10 Cl.Ct. 794, 800 (1986); *United States Fidelity and Guaranty Co.*, 83–2 B.C.A. (CCH) ¶ 16,572. It follows that the mechanics for review of adverse contract-

ing officer decisions set forth in that Act—the applicability of which the instant contracting officer's decision had expressly assumed—have no bearing at all on when, where, or how Fidelity should proceed to obtain, if it can, prepayment review of the Government's demand. The contracting officer's views to the contrary, being incorrect as a matter of law, are therefore of no legal significance.[2] *Skelly and Loy v. United States*, 231 Ct.Cl. 370, 377, 685 F.2d 414, 419 (1982) (contracting officer " 'had no authority to waive a requirement that Congress imposed' ") (quoting *Paul E. Lehman, Inc. v. United States*, 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982)).

Plaintiff attempts to overcome this conclusion by contending that it was not a misapprehension of law that led the contracting officer to name this court as the appropriate forum to hear the merits of the Government's claim for reprocurement costs. Rather, says plaintiff, that direction was given because the contracting officer was aware that, prior to execution of the now-defaulted contract, the contractor had executed an indemnity agreement assigning to plaintiff all claims arising under the contract. Thus, the argument goes, the contracting officer saw plaintiff as "the contractor" and dealt with it on that basis.

■ The argument lacks merit. Indeed, it is affirmatively rejected by the text of the contracting officer's final decision, which specifically identifies plaintiff as a "surety to the defaulted contractor." The letter reads in relevant part as follows:

As your company is the surety to the defaulted contractor, and you have provided a 100% performance bond dated 29 Jul 85, you are responsible, as well as Lester Ellis Plumbing and Heating [the defaulted contractor], for the above damages and reprocurement costs. Lester Ellis Plumbing and Heating has not responded to our

comes subrogated not only to the rights of the prime contractor but to those of the government." *Dependable Ins. Co. v. United States*, 846 F.2d 65, 67 (Fed.Cir.1988).

2. The invalidity of the contracting officer's decision extends only to its assertion regarding the

availability of relief before this court or the contract board pursuant to the Contract Disputes Act. As a demand for the payment of excess reprocurement costs, however, the decision represents a legitimate and enforceable exercise of administrative authority.

demand for payment of the above damages presented by letter dated 20 Aug 92, therefore, the undersigned is now placing this demand against the performance bond issued by your company.

Considering the quoted text, there can be no doubt that the contracting officer did not recognize plaintiff in any status save that of a performance bond surety.

There is also an argument made here that, in consequence of the surety's undertakings in favor of the Government, the Government in turn is bound, under an implied contract, to consider the surety's interests when deciding whether to terminate the principal's contract. The Government's breach of this implied contract, plaintiff contends, is actionable under 28 U.S.C. § 1491.

This argument too is without merit. As noted in *Fireman's Fund,* 909 F.2d at 500, "[t]he requirement for payment and performance bonds on contracts like [plaintiff's] does not, on these facts [referring to the absence of any contract right based either on subrogation or a separate takeover agreement], imply a contract between the government and the bondsman." No more need be said on the point.

■ As its final argument plaintiff contends that even though it has not paid out any funds pursuant to its obligation as performance surety, nevertheless the Government's demand for payment of that obli-

gation is, in practical terms, the equivalent of payment. That is to say, the demand, if left unappealed, would ripen into an incontestable right in favor of the Government upon which judgment against plaintiff could be entered. Thus, plaintiff sees the potential future liability as essentially equivalent to a present payment in kind. Based on this reasoning, plaintiff contends that it should now be accorded the status of a subrogee.

■ The argument has little to recommend it. The equitable right of subrogation arises only upon the discharge, in full, of the surety's obligations under its bond. Restatement (Third) of Suretyship § 23(1) comment b (Tentative Draft No. 2, 1993). Constructive payment of the sort envisioned by plaintiff is no payment at all.

### III

For the reasons stated, defendant's motion to dismiss for lack of jurisdiction is granted. Defendant's counterclaim must also be dismissed for the same reason. *Somali Development Bank v. United States,* 205 Ct.Cl. 741, 751–52, 508 F.2d 817, 822 (1974).