**HARTFORD FIRE INSURANCE COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–167C.

United States Court of Federal Claims.

March 20, 1998.

Henry F. Sonday, Jr., Holbrook, Heaven & Osborn, P.A., Kansas City, KS, for Plaintiff.

Ronald G. Morgan, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk Manhardt, Assistant Director. Emmett C. Wade, U.S. Army Corps of Engineers, and David A. Fishman, Small Business Administration, of counsel.

## OPINION

MARGOLIS, Judge.

This equitable subrogation action is currently before the court on defendant's motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(4), or in the alternative for summary judgment pursuant to RCFC 56(b). Plaintiff, Hartford Fire Insurance Company, claims that it is entitled to judgment against defendant because the government breached its equitable duty to exercise reasonable discretion in administering contract funds, which, in turn forced plaintiff to make payment on a surety bond. After carefully considering the written and oral arguments of both parties, the court concludes that a government duty toward plaintiff never arose because plaintiff failed to give the government proper notice that the contractor was in danger of default. Defendant's motion for summary judgment is therefore granted.

## FACTS

On June 8, 1994, the defendant United States acting through the Small Business

Administration ("SBA") awarded a contract for the construction of the Criminal Investigation Division Field Operations Center ("CIDC") in Fort Leonard Wood, Missouri to K & K Construction Company ("K & K") under the SBA's section 8(a) program.[1] On June 21, 1994, the SBA apprised the U.S. Army Corps of Engineers ("Corps") of this contract and delegated administration and payment authority to the Corps. The SBA also informed the Corps that it would monitor performance of the CIDC contract through its own resources and requested that all actions taken in connection with the CIDC project be in strict coordination with the SBA. The contract named Edgar Poindexter as the contracting officer on behalf of the SBA.

On June 16, 1994, K & K entered into a subcontract agreement with Rau Construction Company ("Rau") to perform various administrative tasks on the CIDC project, including obtaining a surety. Article 8 of this subcontract agreement provided that in the event the government determined that K & K was in default of its obligations or that claims were made against the performance and payment bonds, Rau would have the right to complete the project and resolve any claims against the bonds as representative for the surety. Plaintiff, Hartford Fire Insurance Company, issued performance and payment bonds for K & K's contract on July 22, 1994. Rau agreed to indemnify plaintiff for any loss incurred by reason of executing the performance and payment bonds. According to plaintiff, Rau could not guarantee the bond directly because it was not on the list of sureties approved by the Department of the Treasury. Consequently, plaintiff, an approved company, issued the bonds that Rau then guaranteed.

According to plaintiff, beginning on June 1, 1995, representatives of Rau informed contracting officer Poindexter that K & K had not deposited the last two progress payments in the CIDC project account and that Rau believed the subcontractors and suppliers on the CIDC project were in danger of not being paid. Representatives of Rau, including Rau's president, Gus Rau Meyer, met with Poindexter on June 5, 1995 to inform him that K & K had made over $100,000 in unauthorized withdrawals from the CIDC project funds and that K & K was placing progress payments in unauthorized bank accounts. Additionally, at this meeting Meyer told Poindexter that Rau had not been paid money it was due under its subcontract with K & K and that K & K lacked adequate funds to pay the other subcontractors. Finally, representatives of Rau asked Poindexter to intervene to ensure that K & K paid its subcontractors.

On June 30, 1995, the Corps conducted a final inspection of the CIDC project and a contracting officer representative signed and approved K & K's final progress payment request for $208,190. On July 3, 1995, Rau's attorney sent a letter to Poindexter informing him that K & K had submitted a payment request to the Corps for $208,190 in contravention of the subcontract requirements, that Rau was concerned that this payment would not be used to pay the subcontractors and suppliers, and that Rau would like Poindexter to take immediate action to ensure that K & K would use the progress payments for the correct purpose. The Corps notified K & K on July 6, 1995 that the Corps accepted the project as substantially complete, with deficiencies that remained to be corrected. The Corps retained the balance of the amount due on the contract pending correction of deficiencies and other administrative details required to complete the contract. K & K's progress payment number ten, in the amount of $208,190, was made by check on July 14, 1995. On July 19, 1995, Rau's attorney wrote Poindexter again to inform him that K & K had not deposited the $208,190 progress payment in the designated project account.

During June and July of 1995, Poindexter made numerous attempts to contact the president of K & K, Kenneth Kelly, to resolve Poindexter's concern that K & K might not pay its subcontractors and suppliers on the

---

1. Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a), sets forth a program that grants assistance to certain minority-owned small businesses. See *Y.S.K. Constr. Co. v. United States*, 30 Fed.Cl. 449, 453 (1994).

CIDC project. Kelly failed to respond to Poindexter's inquiries. Poindexter did not, however, take action against K & K until July 14, 1995, when he notified Kelly that he was recommending termination of K & K from the section 8(a) program. On July 26, 1995, Poindexter withdrew the Corps' authority to make payments directly to K & K and asked that all pending and future payment requests be sent to the SBA for approval.

By letter dated August 9, 1995, plaintiff advised the Corps that it was in receipt of claims on the payment bond it issued in the CIDC contract. Plaintiff requested that the Corps withhold any remaining contract funds and stop payment on the $208,190 progress payment. Additionally, the letter advised the Corps of plaintiff's right to equitable subrogation should plaintiff have to make payments on the bond. On September 26, 1995, Rau's attorney informed the Corps that Rau provided the guarantee for the project and would therefore be held accountable for payment to the subcontractors. Rau also asked the Corps not to make the final payment of $103,694 to K & K. The contract was documented as fully completed on April 22, 1996. On May 22, 1996, the final payment check for $103,694 was issued payable to K & K, but delivered to plaintiff. Pursuant to its surety bond, plaintiff paid all the subcontractors and suppliers in August 1996.

Plaintiff filed this suit on March 17, 1997 alleging that defendant acted unreasonably and abused its discretion to the detriment of plaintiff by failing to take reasonable steps to determine whether K & K had the capacity and the intention to pay the subcontractors and suppliers from the $208,190 progress payment, by failing to prevent the $208,190 progress payment from being made directly to K & K, and by failing to take reasonable steps to prevent the $208,190 progress payment from being used for purposes other than paying the subcontractors and suppliers. Plaintiff claims that through the doctrine of equitable subrogation it is entitled to judgment in an amount in excess of $200,000, plus attorneys' fees, interest, and costs.

**DISCUSSION**

The case is currently before the court on defendant's motion to dismiss for failure to state a claim, or in the alternative for summary judgment. Because materials beyond the pleadings are contained in the parties' appendices, defendant's motion to dismiss will be treated as a motion for summary judgment. *See* RCFC 12(b)(4).

To maintain suit in this court, a surety must demonstrate the existence of a contract-based right to sue. *See Fidelity & Deposit Co. v. United States,* 31 Fed.Cl. 540, 542 (1994). A surety may base its cause of action on an independent contract between the government and the surety. *See Fireman's Fund Ins. Co. v. United States,* 909 F.2d 495, 499 (Fed.Cir.1990); *Fidelity & Deposit Co.,* 31 Fed.Cl. at 542; *Westech Corp. v. United States,* 20 Cl.Ct. 745, 749 (1990). The traditional means of asserting a surety's claim, however, is under the doctrine of equitable subrogation. *See Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1161 (Fed.Cir. 1985); *Reliance Ins. Co. v. United States,* 27 Fed.Cl. 815, 826 (1993); *Washington Int'l Ins. Co. v. United States,* 16 Cl.Ct. 663, 666, *aff'd,* 889 F.2d 1101 (Fed.Cir.1989). In the present case, plaintiff does not allege an independent contract between itself and the government, but instead brings its claim under the doctrine of equitable subrogation.

Equitable subrogation is allowed when the surety finances a project to completion after default by the prime contractor. *See Westech Corp.,* 20 Cl.Ct. at 749; *Washington Int'l Ins. Co.,* 16 Cl.Ct. at 666. By financing the government's project to completion, the surety is subrogated to the contractor's property rights in the contract balance and can maintain a claim when normally it would lack standing to sue the government. *See Balboa Ins. Co.,* 775 F.2d at 1161; *Westech Corp.,* 20 Cl.Ct. at 749. Recovery under equitable subrogation is limited to funds held by the government or funds improperly disbursed to a third party, only to the amount of the contract balance. *See Westech Corp.,* 20 Cl.Ct. at 749. The government, however, owes the surety no equitable duty to exercise reasonable discretion in administering contract funds unless and until the surety noti-

fies the government that the contractor has defaulted or is in danger of defaulting under the bond. *See Fireman's Fund Ins. Co.*, 909 F.2d at 498; *Reliance Ins. Co.*, 27 Fed.Cl. at 826; *Ransom v. United States*, 17 Cl.Ct. 263, 272 (1989), *aff'd*, 900 F.2d 242 (Fed.Cir.1990). In other words, notice from the surety is necessary for a surety to prevail on an equitable subrogation claim. *See Fireman's Fund Ins. Co.*, 909 F.2d at 498; *Reliance Ins. Co.*, 27 Fed.Cl. at 827.

■ The Federal Circuit has held that only notice from the surety, not from subcontractors or suppliers, will trigger the government's equitable duty to the surety. *See Fireman's Fund Ins. Co.*, 909 F.2d at 499. In *Fireman's Fund*, the surety did not notify the government of the contractor's failure to pay its subcontractors and suppliers until after the government had fully released the contract payments claimed by the surety. *See id.* The court found the fact that some subcontractors and suppliers had informed the government of the contractor's payment deficiencies prior to release of the contract payments did not substitute for notice by the surety and did not trigger the government's equitable duty to act with reasoned discretion toward the surety. *See id.* The court explained that a surety cannot rely on the contractor's subcontractors or the government to protect its interests because by definition and agreement the surety protects the government's interests. *See id.* The court concluded that the surety knows best when it may be called upon to perform under its bonds and therefore only notice by the surety will trigger the government's equitable duty. *See id.* Similarly, in *Reliance* plaintiff argued that notice by the surety was not necessary because of the government's own inspections of progress on the contract and notice from the subcontractors of problems on the job site. *See Reliance Ins. Co.*, 27 Fed.Cl. at 827. The court, following *Fireman's Fund*, rejected this argument and concluded that plaintiff could not prevail on the merits of its claim because only notice from the surety can satisfy the notice requirement. *See id.* at 827–28.

■ In the present case, plaintiff did finance the CIDC project to completion by paying subcontractors and suppliers as required under its payment and performance bonds. Plaintiff, however, does not allege that it gave the government notice prior to disbursement of the $208,190 progress payment that K & K was in danger of defaulting on the bond. Instead, plaintiff argues that notice of K & K's financial problems from Rau, as the guarantor and indemnitor of the bonds and as representative of the surety, is sufficient to satisfy the notice requirement.

Plaintiff cites the subcontract agreement between Rau and K & K in support of its claim that Rau was the representative of plaintiff and therefore notice from Rau triggered the government's equitable duty to plaintiff. The only reference to Rau serving as the representative of plaintiff is in Article 8 of the subcontract agreement. Under the plain language of Article 8, however, Rau only had the authority to act as representative of the plaintiff when the government determined that K & K was in default or when claims were made against the bonds. Rau voiced its concerns about K & K to the government when neither of these conditions had occurred. Prior to the disbursement of the $208,190 progress payment, the government had not found K & K in default of the CIDC contract and plaintiff does not allege that there were any claims against the bonds at that time. Consequently, Rau did not have the authority to act as representative of plaintiff at the time Rau communicated its concerns about K & K to the government.

Plaintiff also argues that notice from Rau should trigger the government's equitable duty to plaintiff because Rau, as guarantor of the bond, had the same responsibilities and interests as plaintiff. Specifically, plaintiff alleges that because the plaintiff and Rau had the same interest in ensuring that the subcontractors were paid, notice from Rau satisfies the notice requirement. The court, however, finds this argument unpersuasive in light of the Federal Circuit's holding in *Fireman's Fund* that only notice by the actual surety will trigger the government's equitable duty.[2] *See Fireman's Fund Ins. Co.*, 909

---

**2.** The court recognizes that the Federal Circuit

limited the holding of *Fireman's Fund* in *Nation-*

F.2d at 499. The Federal Circuit considered and rejected the possibility of the government's equitable duty arising through notice by someone other than the surety. *See id.; see also Reliance Ins. Co.,* 27 Fed.Cl. at 827 (finding notice from subcontractors insufficient to trigger the government's responsibility to the surety). The court is bound by the Federal Circuit's resolution of this issue and therefore must conclude that plaintiff failed to satisfy the notice requirement. Without the required notice, the government's equitable duty to plaintiff never arose. Consequently, plaintiff could not prevail on the merits of its claim.

## CONCLUSION

For the reasons set forth above, the court grants the defendant's motion for summary judgment. The clerk will dismiss the complaint. Costs for defendant.

---

*al Surety Corp. v. United States,* 118 F.3d 1542 (Fed.Cir.1997). The Federal Circuit found that the notification requirement imposed by *Fireman's Fund* did not apply in *National Surety Corp.* primarily because the government in *National Surety Corp.* was required by contract to retain a certain percentage of the progress payments and failed to satisfy this requirement. *See National Surety Corp.,* 118 F.3d at 1547. Apparently, the court concluded that notice to the government regarding the need to retain pay-

ments was unnecessary where the contract required the government to retain a percentage of the progress payments. *See id.* In *Fireman's Fund* and the present case, however, the government could in its discretion authorize payment without retention of a percentage. *See id.; Fireman's Fund,* 909 F.2d at 497–98. The court concludes, therefore, that the notification requirement imposed by *Fireman's Fund* applies in this case.